OPINION
{¶ 1} This case arises from a sanitary sewer extension project known as the McKaig Avenue Sanitary Sewer Extension (McKaig project) located within the City of Troy. The project contractor, Lehmkuhl Excavating, Inc., appeals from a judgment rendered against it on its claim for additional compensation. Lehmkuhl contends that the trial court erred in rendering judgment in favor of the City of Troy. Specifically, Lehmkuhl contends that the trial court erred in finding that the City was required to notify it of the existence of ground water on the project site. Lehmkuhl also contends that it is entitled to additional compensation under the terms of the contract.
 {¶ 2} We conclude that the trial court did not err in rendering judgment against Lehmkuhl. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} Lehmkuhl filed suit against the City alleging causes of action for equitable adjustment, breach of contract, breach of warranty, superior knowledge, negligence and unjust enrichment. Both parties waived jury trial, and the matter proceeded to a bench trial where the following evidence was adduced.
 {¶ 4} In the early 1990's, the City sought engineers for the McKaig project. Lockwood, Jones and Beals, Inc. (LJB) submitted a "Statement of Qualifications and Technical Proposal" to the City. One section of the Statement, pertaining to the issue of fees and to the question of whether LJB would perform soil boring tests, contained the following statement: "A local geotechnical consultant who was contacted for this pricing stated that he believed that shallow ground water was present in the construction area but questioned the presence of rock at normal sewer depths."
 {¶ 5} The City awarded a contract to LJB to act as the engineer for the project. The contract provided that LJB would prepare "detailed construction drawings, specifications, bidding documents, easement descriptions, and permit applications." The contract specifically excluded LJB from conducting any soil borings.
 {¶ 6} LJB then issued the General Specifications and Contract Documents (Specifications) for bidders on the McKaig extension. In paragraph six of the section entitled "Information for Bidders" the Specifications state that bidders "are required to inform themselves fully of the conditions and requirements of the construction project being proposed." Paragraph nine provides that "no soil boring information is available in regards to this project * * * the Contractor may make subsurface investigations on this project." The contract also requires that any requests for changes in work or for compensation for extra work be made in writing. The contract provides that any loss from floods, storms or other natural causes shall be sustained by the contractor. Finally, the contract states that if water is encountered, the contractor is responsible for furnishing suitable pumping equipment.
 {¶ 7} A legal advertisement for bids on the project was issued. Following the submission of bids, Lehmkuhl was awarded the project contract because its bid of $529,750.44 was approximately eleven thousand dollars lower than the next lowest bid. Lehmkuhl's bid also indicated that the project would be completed within one hundred and eighty days. This time estimate was much shorter than that of any other bidder.
 {¶ 8} Work on the project began on January 14, 1993. According to Lehmkuhl's daily job reports there were many rainy days and days that water had to be pumped from the pipe trenches. There were even days that work was shut down due to rain. In April, the project experienced rain and/or snow. The job reports also indicate that from April 22 until April 29, the company experienced problems with the trench banks, which kept caving in. The job reports for May, June and part of July indicate that the rain continued to be a problem, as did trench cave-ins. The evidence also indicates that a change order was executed by the parties in June. That order added the sum of $3,240 to the contract price.
 {¶ 9} Minutes from a meeting attended by Lehmkuhl and the City on June 28 indicate that Lehmkuhl complained that delays had been caused by "poor trench conditions over a large percent of the first half of the job, trouble with pipe joints not fitting correctly, and the rainy weather hampering the trucking of the excavated material." The minutes further indicated that Lehmkuhl still expected to complete the project on time. The minutes also indicate that Lehmkuhl pulled off the job for two weeks; the testimony at trial indicated that this was done in order to work on another project.
 {¶ 10} On July 1, 1993, Lehmkuhl wrote a letter to the City requesting an extension of completion time due to being "rained out on numerous days, and unforseen underground conditions." Lehmkuhl indicated that it expected the project to be completed by the end of August.
 {¶ 11} The project was substantially completed in August of 1993, and was considered by all parties to be timely completed.
 {¶ 12} On November 30, Lehmkuhl sent a letter to the City stating that it had incurred extra costs. The letter went on to state that the company was in the process of figuring the extra costs and that it would provide the costs to the City as a request for an "equitable adjustment." The City replied in a letter setting forth various contract provisions and indicating that those provisions should answer Lehmkuhl's letter regarding extra costs. It appears that this letter was intended to constitute a denial of the request for equitable adjustment.
 {¶ 13} Lehmkuhl submitted its Periodic Estimate for Partial Payment No. 6 on December 28, 1993. The document stated that it was a "true and correct" statement of the contract account up to and including that date. The document provided a line for "extra work performed to date." Lehmkuhl only claimed the amount set forth in the first change order as extra work. On December 30, Lehmkuhl prepared a document entitled "Change Order No. 2 Final." This change order, which was signed by the City on January 6, 1994, reduced the contract price by $1,240. Subsequently, Lehmkuhl submitted a request for adjustment seeking an additional payment of $335,361.04. The request was denied by the City, and Lehmkuhl filed suit.
 {¶ 14} After a trial, the trial court rendered judgment for the City. The trial court noted that it could not determine whether the delays claimed by Lehmkuhl were caused by ground water, excessive rain, or both. It also noted that "the fact that a geotechnical consultant told LJB that he `believed' shallow ground water was in the area is also not dispositive. As noted earlier, there is no reference to exact tests or expert testimony. It is unclear to the Court if shallow ground water means three feet or fifteen feet deep and it is unclear if this was the cause of the problem or excessive rain." The court found that the City had not made any misrepresentations regarding the conditions of the project site. Finally, the trial court found that the claim for additional compensation had no merit because there was no discrepancy in the contract plans or specifications.
 {¶ 15} From the judgment rendered against it, Lehmkuhl appeals.
 II {¶ 16} Lehmkuhl's First Assignment of Error states as follows:
 {¶ 17} "The trial court erred by dismissing appellant's claims based on the Spearin doctrine."
 {¶ 18} Lehmkuhl contends that the trial court erred by ruling in favor of the City. The basis of this argument is Lehmkuhl's claim that the City had information — specifically the statement contained in the LJB proposal — that shallow ground water was present on the project site and that these ground water levels caused unstable soil conditions. Lehmkuhl further claims that these conditions resulted in having to dig wider trenches than anticipated to lay the pipe and caused it to use more backfill material than anticipated, especially in the areas covered by roadway. Lehmkuhl cites United States v. Spearin (1918), 248 U.S. 132, for the proposition that "in cases involving government contracts, the government implicitly warrants the accuracy of its affirmative indications regarding job site conditions."
 {¶ 19} "The Spearin doctrine holds that, in cases involving government contracts, the government impliedly warrants the accuracy of its affirmative indications regarding job site conditions." Sherman R. SmootCo. v. Ohio Dept. Of Admin. Services (2000), 136 Ohio App. 3d 166, 176, citations omitted. "Where the information provided by the government was obviously intended to be used by bidding contractors in formulating their bids, the implied warranty of job site conditions will prevail over express contract clauses that disclaim any responsibility for the accuracy of information provided to contractors, and that require contractors to examine the site and check the plans." Id., citations omitted. "Recovery will be denied under the Spearin doctrine where (1) a reasonable inspection of the job site by the contractor would have revealed the actual site conditions, or (2) the information provided by the government was accurate, but the conclusions drawn therefrom by the contractor differed from the actual site conditions." Smoot, at 177, citation omitted.
 {¶ 20} In this case, although the proposal submitted to the City by LJB did contain a statement that a local geotechnical consultant believed that shallow ground water was present, there is no evidence demonstrating that either the City or LJB had knowledge that there actually was ground water or at what level ground water might be encountered. Furthermore, the evidence reveals that the City did not make any affirmative representations regarding the soil or water conditions of the project site. In other words, it did not claim that the project site was free of ground water.
 {¶ 21} At trial, the owner of Lehmkuhl, Joel Lehmkuhl, testified that his company did some soil testing at the site by digging "probably ten different holes" with a backhoe. The company did not test the conditions under the roadway. However, Joel Lehmkuhl stated that he was not present when this testing was done, and he could not provide any documentary evidence regarding the results of those tests. Furthermore, he could not provide any information regarding the depth of his company's testing.
 {¶ 22} The record also contains testimonial evidence that any soil testing would have been more accurate had Lehmkuhl performed the testing with an auger. Indeed, Joel Lehmkuhl admitted as much. There was also testimony that Lehmkuhl could have performed soil borings at an angle, in order to determine the conditions under McKaig road. Additionally, contrary to Lehmkuhl's claim, the contract did not prohibit boring through the roadway in order to take soil samples.
 {¶ 23} A reviewing court will not reverse a judgment of the trial court that is supported by some competent, credible evidence. C.E. MorrisCo. v. Foley Const. Co. (1978), 54 Ohio St.2d 279, syllabus. "Furthermore, we must presume the findings of the trier of fact are correct because the trier of fact is best able to observe the witnesses and use those observations in weighing the credibility of the testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81.
 {¶ 24} Spearin stands for the proposition that the City cannot make affirmative statements regarding site conditions and then hold the contractor responsible for any conditions differing from those asserted by the City, notwithstanding contractual provisions purporting to do so. Here, the City made no affirmative statements concerning the absence of ground water. Moreover, Lehmkuhl failed to conduct soil boring tests with an auger and completely failed to investigate the soil conditions under the roadway. Therefore, we conclude that the trial court did not err in denying Lehmkuhl's claim for relief under the Spearin doctrine. We also conclude that on this record, the trial court could reasonably find that the problems encountered by Lehmkuhl were actually the result of extensive rainfall rather than the result of groundwater, so that any failure on the part of the City to inform Lehmkuhl of the existence of potential groundwater was immaterial.
 {¶ 25} The First Assignment of Error is overruled.
 III {¶ 26} Lehmkuhl's Second Assignment of Error is as follows:
 {¶ 27} "The trial court erred by dismissing appellant's claim for breach of contract."
 {¶ 28} Although Lehmkuhl assigns as error the trial court's decision to deny his claim for breach of contract, Lehmkuhl's actual argument is directed solely to its claim that the trial court incorrectly determined that the company was not entitled to additional compensation. In support, Lehmkuhl claims the contract makes it clear that its bid of $529,750.44 was "merely an estimate" and the contract provides that Lehmkuhl is entitled to receive "a sum of money equal to the actual work and materials furnished." Lehmkuhl argues it is thus entitled to additional compensation or equitable adjustment since its "actual work and materials exceeded those originally contemplated in the bid."
 {¶ 29} The issues raised in this argument involve issues of contract interpretation and construction, which are questions of law subject to de novo review. Sherman R. Smoot Co. Of Ohio v. Ohio Dept. Of Admin.Services (2000), 136 Ohio App. 3d 166, 172, citations omitted. "The trial court's findings of fact, however, are entitled to deference on appeal and will not be overturned so long as there is competent, credible evidence to support them." Id., citation omitted.
 {¶ 30} Where a construction contract specifically provides that any claims for extra work must be made in writing prior to executing the work, the clause is valid and binding upon the parties, and no recovery can be had for extra work without a written directive, unless the writing requirement is waived by the City. Foster Wheeler Enviresponse, Inc. v.Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 360,1997-Ohio-202, citations omitted. Proof of a waiver must either be in writing, or by clear and convincing evidence sufficient to leave no reasonable doubt that the City intended to waive the writing requirement. Frantz v. Van Gunten (1987), 36 Ohio App.3d 96, 99. Clear and convincing evidence is evidence that produces in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 31} The evidence in this case establishes that, with the exception of the first change order, Lehmkuhl did not make any written request for additional work until after the project was completed. Furthermore, there is no evidence in the record that the City waived the writing requirement. The City did not give approval for any work exceeding the bid amount, other than as noted in the first change order.
 {¶ 32} We conclude that there is no evidence that the contract between the parties is not valid and enforceable. There is no evidence that Lehmkuhl complied with the terms of the contract requiring it to seek written approval of any additional work. We have not found any other language in the contract that would contradict this conclusion. The fact that Lehmkuhl made an error in its bid does not, in this case, justify an award of additional monies.
 {¶ 33} The Second Assignment of Error is overruled.
 IV {¶ 34} Both of Lehmkuhl's Assignments of Error having been overruled, the judgment of the trial court is affirmed.
Wolff and Donovan, JJ., concur.