OPINION
{¶ 1} This case involves the appeal of Thrivent Financial for Lutherans (Thrivent) from a decision granting a Civ. R. 60(B) motion for relief from judgment. The motion was filed by Plaintiffs/Appellees, Jan Levy, Annyce Levy, Jeff Levy, and Maureen Levy (Plaintiffs or Levys), who sought to set aside a summary judgment granted to Thrivent on October 28, 2003. In setting aside the judgment, the trial court relied on Civ. R. 60(B)(5), and the specific ground of fraud perpetrated on the court. On appeal, Thrivent raises the following assignments of error:
 {¶ 2} I. The trial court erred in granting Plaintiffs' Motion to Vacate Summary Judgment (Case No. 20859).
 {¶ 3} II. The trial court erred in not dismissing Plaintiff's 60(B) Motion for Relief from Judgment (Case Nos. 20859 and 21052).
 {¶ 4} III. The trial court erred when it reversed its summary judgment granted to Thrivent and subsequently issued an order to bind Thrivent and non-party beneficiaries to a trial judgment for which they were not parties (Case No. 21052).
 {¶ 5} After considering the record and applicable law, we find that the trial court did not err in setting aside the summary judgment granted to Thrivent. However, the court did err in subjecting Thrivent to a judgment already entered in the case without affording Thrivent due process. Accordingly, the judgment of the trial court will be affirmed in part and reversed in part, and this case will be remanded for further proceedings.
 I. Procedural Background {¶ 6} The present action began in September, 2002, in the Montgomery County Probate Court, when Jan Levy filed a complaint against Joni Thompson and Lutheran Brotherhood Securities Corporation (Thrivent's predecessor). Levy's complaint arose from events surrounding the administration of funds belonging to Levy's mother, Thelma Levy. According to the record below, Thelma executed a will on April 30, 1986, leaving all her estate (other than a few minor bequests) to her son, Jan Levy, to Jan's four children (Jeff, Cameron, Douglas, and Maureen), and to Jan's wife, Annyce (who is now Jan's ex-wife). Shortly before executing the will, Thelma also signed a power of attorney giving her sister, Virginia Lutz, the right to act for her as attorney-in-fact. When these documents were signed, Thelma owned 20 certificates of deposit (CDs). The majority of the CDs named Thelma's family, Thelma, or Virginia as beneficiaries.
 {¶ 7} Allegedly, Thelma began suffering from the effects of Alzheimer's disease in the late 1980's. Virginia used the power of attorney to sell the CDs and purchase three separate annuities from Lutheran (now Thrivent), in January, February, and May, 1992. The annuities were purchased at different times due to various maturity dates on the CDs. At the time of purchase, the annuities represented the following percentages of Thelma's total investments: January annuity — 52%; February annuity — 11%; May annuity — 37%. When the annuities were purchased, Lutheran's salesperson attempted to mirror the way in which Thelma had set up the CDs. However, on two CDs, the listed beneficiary was Thelma Levy or Virginia Lutz, with no designation indicating the disposition of the funds if both women died before the CDs were sold. Despite this fact, the agent designated Virginia as beneficiary and added the term "per stirpes."
 {¶ 8} In 1992, Thelma's home was sold and the proceeds were placed in a mutual fund. Fund dividends and annuity proceeds were used thereafter to pay for Thelma's care. Proceeds were taken from the annuities on a pro-rata basis. After 1992, Virginia continued to use the power of attorney until she also became incompetent. Virginia then died in 1995. In 1994, Thelma executed another power of attorney in favor of Virginia's daughter, Joni Thompson.
 {¶ 9} Beginning in 1998, Thompson began to pay for Thelma's care by using the proceeds from the two annuities that primarily benefitted the Levys, and did not use money from the annuity that benefitted Thompson's own family. Consequently, by the time Thelma died in 2002, the Levy annuities were almost completely depleted, while the annuity that primarily benefitted Thompson and her siblings (the January annuity on which Virginia was the "per stirpes" beneficiary) had continued to grow. The end result was that at the time of Thelma's death, the annuities' respective ratios to total investment were: January annuity — 89%; February annuity — 3%; May annuity — 8%.
 {¶ 10} Based on the above facts, Jan Levy sued Thompson for conversion, breach of fiduciary duty, and undue influence. He also included Lutheran/Thrivent in the lawsuit, under a "constructive trust" claim. However, the only allegations made against Thrivent were that Thrivent possessed funds belonging to the Levys and that if Thrivent disbursed the funds to anyone else, the disbursement would be wrongful.
 {¶ 11} Thrivent filed an answer to the complaint and did not raise any defenses other than failure to state a claim. Subsequently, on July 18, 2003, Thrivent moved for judgment on the pleadings, claiming that there were no allegations against Thrivent that demonstrated liability. Thrivent also argued that constructive trust was not a claim or cause of action, but was a remedy for unjust enrichment. In particular, Thrivent stated that:
 {¶ 12} "In the present case, Thrivent does not in any way claim to own the funds at issue, or seek to retain them for its own use. Further, Plaintiffs do not allege that Thrivent owns or is in wrongful possession of these funds. Neither do Plaintiffs allege that Thrivent came into possession of these funds through fraud or duress, or any other type of wrongful, illegal or unconscionable conduct. Thrivent merely maintains these funds in an account and admits that it is required to remit these funds to the `rightful' and `lawful' owner upon request. Therefore, imposition of a constructive trust is not a proper remedy in this case. Plaintiff's Amended Complaint simply fails to state any claim whatsoever against Thrivent. As such, Thrivent must be dismissed from this action."
 {¶ 13} By this time, Jan Levy's ex-wife and children had been added as Plaintiffs. The Levys did not oppose Thrivent's motion, and the trial court dismissed Thrivent from the action on August 21, 2003. Subsequently, on September 17, 2003, the Levys filed a motion for leave to file an amended complaint to add a declaratory judgment action against Thrivent and a new cause of action against Thompson. The court granted leave, and a second amended complaint was filed on September 18, 2003. Thrivent then filed another motion to dismiss and/or for summary judgment on October 6, 2003. Thrivent also asked the court to award sanctions against the Levys.
 {¶ 14} In the motion, Thrivent again claimed that it had not been accused of wrongdoing and that there was no legal controversy between it and the Levys. Thrivent again stressed that:
 {¶ 15} "As Thrivent set forth in its prior motion, and as is obvious from Plaintiff's allegations, Thrivent does not in any way claim to own the funds at issue, or seek to retain them for its own use. Thrivent has taken no action with any parties' interest in the funds, and Plaintiffs do not allege to the contrary. Thrivent merely maintains these funds in an accountand admits that it is required to remit these funds to the`rightful' and `lawful' owner upon request, and that the`rightful' or `lawful' owner will be determined by this Court.
Plaintiff's Amended Complaint simply fails to state any claim whatsover against Thrivent, or show that Thrivent is necessary to this action in any way. As such, Thrivent should be dismissed from this action." (Emphasis added).
 {¶ 16} Based on the representations in the motion, the trial court again dismissed Thrivent on October 28, 2003. The court did not include a Civ. R. 54(B) certification in its order. The court also did not award sanctions against the Levys.
 {¶ 17} The case was then tried to the court with Thompson as the remaining defendant. On July 13, 2004, the court issued a decision and entry, finding that Thompson had exercised undue influence over Thelma Levy. The court found that Thompson had converted funds to her own use and had embezzled or concealed assets in the amount of $22,915.69. Consequently, Thompson was ordered to pay this amount, plus a 10% penalty, within thirty days.
 {¶ 18} The court also found that Thompson had improperly paid down the annuities to benefit herself and her siblings. Therefore, the court ordered reallocation of the annuity accounts to more accurately reflect the fair withdrawal method in place before Thompson held the power of attorney. Specifically, the January annuity account was to now include 52% of the total remaining balance; the February annuity account was to include 11% of the total remaining balance, and the May annuity account was to include 37% of the total remaining balance. The court additionally ordered Thrivent to distribute the proceeds of the February and May annuities to the designated beneficiaries consistent with the Court's finding.
 {¶ 19} Finally, the court found that since Virginia Lutz had predeceased Thelma Levy, the annuity designating Virginia "per stirpes" without an alternate beneficiary was an asset of Thelma Levy's estate. In this regard, the court relied on the fact that when Virginia purchased the annuities and allowed the addition of the "per stirpes" language, she permitted language that was not included on the CDs and was not consistent with the CDs that were used to purchase the annuities. Thelma Levy had also never been told, nor was she ever aware that these changes in disposition of her property had been made. The effect of the court's ruling was that 88% of the January annuity was to be paid to the Estate of Thelma Levy and the remaining 12% was to be paid to Jan Levy. Based on Thelma's will, this also meant that Joni Thompson and her siblings would not be entitled to any of the proceeds in the January annuity. The court again ordered Thrivent to distribute the proceeds consistent with the court's findings.
 {¶ 20} Thompson appealed from the probate court's decision on July 30, 2004, and the appeal was docketed in our court as Montgomery App. No. 20641. However, on September 21, 2004, Thrivent filed an interpleader action in the United States District Court for the Western Division of Ohio, asking the district court to determine the respective shares of various individuals in the three annuities that were the subject of the Montgomery County Probate Court action. (See Thrivent LutheranFinancial for Lutherans v. Thompson, United States District Court, S.D. Ohio Case No. 3-94CV327). After finding out about the federal court case, the Levys promptly filed a Civ. R. 60(B) motion with the probate court on October 1, 2004, asking for relief from the order dismissing Thrivent from the Montgomery County Probate Court action.
 {¶ 21} We issued an order staying the appeal in App. No. 20641, pending resolution of the federal court case. However, on November 30, 2004, we remanded the case so the trial court could rule on the motion for relief from judgment. On December 14, 2004, the trial court granted the motion for relief from judgment under Civ. R. 60(B)(5), based on a finding that Thrivent had perpetrated fraud on the court. Thrivent appealed from that order on January 12, 2005, and the appeal was docketed in our court as Montgomery App. No. 20859.
 {¶ 22} The Levys had also filed a motion in the trial court on December 28, 2004, asking the trial court to clarify its order vacating the summary judgment granted to Thrivent. In the motion, the Levys requested that the trial court issue an order indicating that Thrivent was bound by the July 13, 2004 decision. They also asked the trial court to specifically order Thrivent to accomplish the rebalancing and distirbution of funds in the manner ordered by the court on July 13, 2004.
 {¶ 23} Subsequently, on January 26, 2005, the Levys filed a motion with our court, asking us to remand the case for determination of their motion to clarify. We granted the motion on March 9, 2005, and remanded the case to the trial court for the limited purpose of ruling on the motion for clarification. On April 8, 2005, the trial court filed an entry indicating that Thrivent was bound by the July 13, 2004 decision. The trial court also ordered Thrivent to allocate and distribute the funds in accordance with the court's July 13, 2004 decision. Thrivent then filed a notice of appeal from the April 8, 2005 decision, and the appeal was docketed as Montgomery App. No. 21052.
 {¶ 24} We chose to consolidate Appeal Nos. 20859 and 21052, which involve only the court's decision to grant the motion for relief from judgment and the court's clarifying order stating that Thrivent was bound by the court's prior order of July 13, 2004. The appeal of the judgment against Thompson (App. No. 20641) was not consolidated and is not part of this appeal.
 II. Propriety of Granting the Motion for Relief from Judgment {¶ 25} In contesting the trial court decision, Thrivent has presented two assignments of error in each appeal and two issues for review within each assignment of error. Because the issues for review do not correspond logically to the assignments of error, we will address what we perceive to be the challenges to the trial court decision.
 {¶ 26} One such challenge is that the Levys should have been precluded from filing a motion for relief from judgment because they failed to timely appeal from either of the two entries that dismissed Thrivent from the action. Quoting from State ex rel.Richard v. Cuyahoga Cty. Commrs., 89 Ohio St.3d 205, 206,2000-Ohio-135, 729 N.E.2d 755, Thrivent notes that "`[a] Civ.R. 60(B) motion for relief from judgment cannot be used as a substitute for a timely appeal or as a means to extend the time for perfecting an appeal from the original judgment.'"
 {¶ 27} As a general matter, this statement is obviously true. However, the very nature of a motion for relief from judgment is that a final judgment has issued and the appeal time may have run. Consequently, one might expect that the appeal time in a particular case would have elapsed before a motion for relief from judgment is filed. The important factor for purposes of the present case is that the orders granting summary judgment or judgment on the pleadings were interlocutory and could have been reconsidered or revised at any time before entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. See, e.g., Perritt v. Nationwide Mut. Ins. Co.,
Franklin App. No. 03-AP-1008, 2004-Ohio-4706, at ¶ 10, citingPitts v. Ohio Dept. of Transp. (1981), 67 Ohio St.2d 378, fn. 1, 423 N.E.2d 1105. In particular, the orders could not have been appealed until final judgment was rendered, because they lacked a Civ. R. 54(B) certification. In this regard, Civ. R.54(B) provides that:
 {¶ 28} "[i]n the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
 {¶ 29} Thrivent claims that the Levys should have appealed from the October 28, 2003 order granting summary judgment for Thrivent. However, that judgment did not contain Civ. R. 54(B) language and was only an interlocutory order that was subject to revision at any time before entry of final judgment as to all parties and all claims. Thus, the first time the Levys could have appealed any trial court orders was when final judgment was issued against the remaining party on July 13, 2004. For the same reason, the orders dismissing Thrivent were not "final judgments" for purposes of the application of res judicata. See, e.g.,Grava v. Parkman Twp., 73 Ohio St.3d 379, 1995-Ohio-331,653 N.E.2d 226, syllabus (noting that for res judicata to apply, there must be a "valid final judgment rendered upon the merits").
 {¶ 30} Furthermore, when final judgment was issued on July 13, 2004, the Levys had no reason to appeal Thrivent's dismissal, since Thrivent had specifically informed both the probate court and the Levys that it would comply with the court's decision about allocation and distribution of the annuities. This representation was, in fact, the reason why Thrivent was dismissed from the case. It was only when Thrivent filed an interpleader action in federal court on September 21, 2004, that the true state of affairs became evident. The Levys then filed their motion for relief from judgment on October 1, 2004, or very shortly after the federal court action was filed.
 {¶ 31} Regarding motions for relief for judgment, Civ. R. 60(B) provides that:
 {¶ 32} "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken."
 {¶ 33} The law for evaluating such motions is well-established. Specifically, the movant must show:
 {¶ 34} "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE Automatic Elec., Inc. v. ARC Industries, Inc.
(1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus.
 {¶ 35} On appeal, our task is to decide if the trial court abused its discretion, which requires an evaluation of whether the trial court's conduct was "unreasonable, arbitrary, or unconscionable." State ex rel. Richard v. Seidner,76 Ohio St.3d 149, 151, 1996-Ohio-54, 666 N.E.2d 1134. After reviewing the record, we find no abuse of discretion.
 {¶ 36} In granting relief from judgment, the trial court found that Thrivent had perpetrated a fraud upon the court. InCoulson v. Coulson, (1983), 5 Ohio St.3d 12, 15,448 N.E.2d 809, the Ohio Supreme Court held that a court may entertain a Civ. R. 60(B)(5) motion for relief from judgment where an officer of the court such as an attorney actively participates in defrauding the court. The Supreme Court also noted that a trial court's interpretation of this point is entitled to great weight, because the trial court is in the best position to know if fraud has been perpetrated. 5 Ohio St.3d at 16.
 {¶ 37} We agree with the trial court that relief from judgment was warranted by Thrivent's actions in misleading the court. In this regard, Thrivent contends that the Levys have simply culled words from documents Thrivent filed in the trial court, in order to "manufacture a promise." We disagree that any promise has been manufactured. The statements in question were made directly to the trial court, in written documents, for the purpose of persuading the court to dismiss Thrivent as a party.
 {¶ 38} Accordingly, when Thrivent's lawyers obtained dismissal of the action against Thrivent by representing to the court that their client would pay funds as the court ordered, both the court and the other parties to the action were entitled to rely on the representation. The fact that Thrivent failed to comply with this representation and instead filed a lawsuit in federal court is disturbing, and certainly warrants setting the judgment aside.
 {¶ 39} Based on the preceding discussion, the Levys are entitled to relief under subsection (5) of Civ. R. 60(B), on the grounds of fraud perpetrated upon the court. They also have a meritorious claim, since they have already prevailed on the merits in probate court. And finally, the motion was made within a reasonable time, i.e., it was filed less than three months after judgment was issued, and very shortly after the federal court action was filed. We also note that even if the court had resorted to Civ. R. 60(B)(3), which relates to fraud between parties, the result would have been the same. As a result, the trial court did not abuse its discretion in granting the motion for relief from judgment.
 III. Propriety of the Clarifying Order Issued on April 8, 2005 {¶ 40} Before we address the remaining issues, we should again stress that the lack of organization in Thrivent's briefs complicates our discussion. Nonetheless, we construe the argument to be that the trial court order clarifying the motion for relief from judgment unfairly bound Thrivent to a judgment that was granted before Thrivent was added to the case, and denied Thrivent due process. The basis of the due process claim is that the trial court failed to allow Thrivent an opportunity to be heard and the right to produce testimony, including the right to cross-examine witnesses. Granting the motion for relief from judgment would not have had such an effect, since it simply restored Thrivent to the status of a party defendant and did not directly order relief against Thrivent. However, the court's later clarification of its order did bind Thrivent to the prior judgment. In particular, the clarified order specifically directed Thrivent to disburse the annuity money in accordance with the court's prior order of July 13, 2004.
 {¶ 41} The clarified order of April 8, 2005, must be vacated because the trial court failed to provide Thrivent with due process. "`The fundamental requisite of due process of law is the opportunity to be heard.'" Wightman v. Consolidated Rail Corp.,86 Ohio St.3d 431, 449, 199-Ohio-383, 715 N.E.2d 546
(Lundberg-Stratton, concurring in part and dissenting in part). When the trial court vacated the judgment that had dismissed Thrivent as a party, the court should have given Thrivent an opportunity to be heard on the subject of the non-party beneficiaries who were asserting claims to the funds.
 {¶ 42} We fully recognize that Thrivent brought this problem on itself by failing to follow appropriate procedures. When Thrivent was initially made a defendant in the action in probate court, the appropriate course would have been to file a cross-claim and counterclaim for interpleader. In this regard, Civ. R. 22 provides that:
 {¶ 43} "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.
 {¶ 44} "In such an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party may deposit all or any part of such sum or thing with the court upon notice to every other party and leave of court. The court may make an order for the safekeeping, payment or disposition of such sum or thing."
 {¶ 45} The purpose of interpleader is to "`to expedite the settlement of claims to the same subject matter, prevent multiplicity of suits, with the attendant delay and added expense, and to provide for the prompt administration of justice.'" Sharp v. Shelby Mut. Ins. Co. (1968),15 Ohio St.2d 134, 144, 239 N.E.2d 49.
 {¶ 46} Instead of following this simple procedure, Thrivent asked to be dismissed from the pending action, allowed that action to proceed to judgment, and then filed a federal court action involving most of the same parties. The effect of this course of conduct disrupted the settlement of competing claims to the fund, added significant delay to the process, and increased the expenses of all the parties, including Thrivent. In view of these facts, we would normally be inclined to hold that Thrivent has waived any objection to the trial court's action. An additional reason for affirming the trial court's clarifying order would be the fact that a stakeholder merely deposits money with the court and allows the court to resolve the issue of which claimants are entitled to the funds. See, e.g., Wheeler v.Ohio State University Medical Center, Scioto App. No. 03CA2922,2004-Ohio-2769, at ¶ 12-13. As a result, one could argue that Thrivent did not really need to be "heard."
 {¶ 47} We are not comfortable ignoring the fact that other claims to the funds may exist, and have been asserted in other litigation. See Thrivent Financial for Lutherans v. Thompson
(Sept. 20, 2005), S.D. Ohio No. 3:04CV327, unreported, 2005 WL 2290312, in which the federal district court refused to dismiss an interpleader action brought by Thrivent against the Levys and others. The federal court's decision was based on the fact that the federal complaint named six defendants who were not parties to the Montgomery County Probate Court action. 2005 WL 2290312, at *3. The clarifying order is inconsistent with these asserted claims and could impact the ability of the non-party beneficiaries to obtain funds they may be owed.
 {¶ 48} Accordingly, we are compelled to vacate the trial court order of April 8, 2005, and remand this case for further proceedings. On remand, the appropriate course would be for Thrivent to file a cross-claim and counterclaim for interpleader in Montgomery County Probate Court, together with a request that any parties who assert a claim to the funds should be added to the probate court action. Thrivent should also dismiss the pending action in federal court, since the state court action was filed earlier, and the state court judge is intimately familiar with the issues.
 {¶ 49} After Thrivent files a counterclaim and cross-claim for interpleader and the proper parties are added, the probate court may then take such evidence as it deems necessary to resolve the issue of whether any additional beneficiaries are entitled to some part of the funds. Notably, Thrivent's role in the case, absent some type of claim against it, is simply to initiate interpleader and to deposit funds with the court.
 {¶ 50} Based on the preceding discussion, the assignments of error are overruled in part and are sustained in part. The trial court did not err in granting the motion for relief from judgment, but it did err in subjecting Thrivent to a judgment that had already been entered. Accordingly, the order setting aside the summary judgment granted to Thrivent is affirmed, the clarifying order of April 8, 2005, is vacated, and this case is remanded for further proceedings.
Fain, J., and Donovan, J., concur.