OPINION
{¶ 1} Defendant-appellant Joni Thompson (hereinafter "Thompson") appeals from a decision of the Montgomery County Court of Common Pleas, Probate Division, which held that Thompson and her mother, Virginia Lutz (hereinafter "Virginia"), had committed improper conduct while holding powers of attorney for Plaintiff-appellee Jan Levy's mother, Thelma Levy, who passed away on June 29, 2002.
 {¶ 2} The present action began in September, 2002, when Jan filed a complaint against Thompson for conversion, breach of fiduciary duty, and undue influence. He also brought suit against the Lutheran Brotherhood Securities Corporation (now known as "Thrivent Financial Solutions") under a constructive trust claim. The only allegations made against Thrivent were that it possessed funds belonging to the Levys, and that said funds should be disbursed to the Levys and no one else.
 {¶ 3} This matter was first appealed in Levy v. Thompson
(Dec.16, 2005), Montgomery App. No. 21052, 2005-Ohio-6675
(hereinafter "Levy I"). In that opinion, we held that the probate court erred when it dismissed Thrivent prior to trial. While our decision in Levy I provided a thorough history of the case, the only issues adjudicated pertained solely to Thrivent's dismissal. Levy I did not address the merits of Thompson's appeal of the probate court's decision filed on July 14, 2004. Thompson's appeal was originally filed on July 30, 2004, but the appeal was stayed pending a determination on Thrivent's participation in the case. Thompson's appeal is now properly before us.
 I {¶ 4} We set forth the history of the case in Levy I, and repeat it herein in pertinent part:
 {¶ 5} "According to the record below, Thelma executed a will on April 30, 1986, leaving all her estate (other than a few minor bequests) to her son, Jan Levy, to Jan's four children (Jeff, Cameron, Douglas, and Maureen), and to Jan's wife, Annyce (who is now Jan's ex-wife). Shortly before executing the will, Thelma also signed a power of attorney giving her sister, Virginia Lutz, the right to act for her as attorney-in-fact. When these documents were signed, Thelma owned 20 certificates of deposit (CDs). The majority of the CDs named Thelma's family, Thelma, or Virginia as beneficiaries.
 {¶ 6} "Allegedly, Thelma began suffering from the effects of Alzheimer's disease in the late 1980's. Virginia used the power of attorney to sell the CDs and purchase three separate annuities from Lutheran (now Thrivent), in January, February, and May, 1992. The annuities were purchased at different times due to various maturity dates on the CDs. At the time of purchase, the annuities represented the following percentages of Thelma's total investments: January annuity — 52%; February annuity — 11%; May annuity — 37%. When the annuities were purchased, Lutheran's salesperson [Matt Buehrer] attempted to mirror the way in which Thelma had set up the CDs. However, on two CDs, the listed beneficiary was Thelma Levy or Virginia Lutz, with no designation indicating the disposition of the funds if both women died before the CDs were sold. Despite this fact, the agent designated Virginia as beneficiary and added the term `per stirpes.'
 {¶ 7} "In 1992, Thelma's home was sold and the proceeds were placed in a mutual fund. Fund dividends and annuity proceeds were used thereafter to pay for Thelma's care. Proceeds were taken from the annuities on a pro-rata basis. After 1992, Virginia continued to use the power of attorney until she also became incompetent. Virginia then died in 1995. In 1994, Thelma executed another power of attorney in favor of Virginia's daughter, Joni Thompson.
 {¶ 8} "Beginning in 1998, Thompson began to pay for Thelma's care by using the proceeds from the two annuities that primarily benefitted the Levys, and did not use money from the annuity that benefitted Thompson's own family. Consequently, by the time Thelma died in 2002, the Levy annuities were almost completely depleted, while the annuity that primarily benefitted Thompson and her siblings (the January annuity on which Virginia was the `per stirpes' beneficiary) had continued to grow. The end result was that at the time of Thelma's death, the annuities' respective ratios to total investment were: January annuity — 89%; February annuity — 3%; May annuity — 8%.
 {¶ 9} "* * * On July 13, 2004, the court issued a decision and entry, finding that Thompson had exercised undue influence over Thelma Levy. The court found that Thompson had converted funds to her own use and had embezzled or concealed assets in the amount of $22,915.69. Consequently, Thompson was ordered to pay this amount, plus a 10% penalty, within thirty days.
 {¶ 10} "The court also found that Thompson had improperly paid down the annuities to benefit herself and her siblings. Therefore, the court ordered reallocation of the annuity accounts to more accurately reflect the fair withdrawal method in place before Thompson held the power of attorney. Specifically, the January annuity account was to now include 52% of the total remaining balance; the February annuity account was to include 11% of the total remaining balance, and the May annuity account was to include 37% of the total remaining balance. The court additionally ordered Thrivent to distribute the proceeds of the February and May annuities to the designated beneficiaries consistent with the Court's finding.
 {¶ 11} "Finally, the court found that since Virginia Lutz had predeceased Thelma Levy, the annuity designating Virginia `per stirpes' without an alternate beneficiary was an asset of Thelma Levy's estate. In this regard, the court relied on the fact that when Virginia purchased the annuities and allowed the addition of the `per stirpes' language, she permitted language that was not included on the CDs and was not consistent with the CDs that were used to purchase the annuities. Thelma Levy had also never been told, nor was she ever aware that these changes in disposition of her property had been made. The effect of the court's ruling was that 88% of the January annuity was to be paid to the Estate of Thelma Levy and the remaining 12% was to be paid to Jan Levy. Based on Thelma's will, this also meant that Joni Thompson and her siblings would not be entitled to any of the proceeds in the January annuity. The court again ordered Thrivent to distribute the proceeds consistent with the court's findings."
 {¶ 12} It is from this judgment which Thompson now appeals.
 II {¶ 13} Thompson's sole assignment of error is as follows:
 {¶ 14} "THE PROBATE COURT ERRED IN DETERMINING THAT THE `PER STIRPES' DESIGNATION IN THE ANNUITY ESTABLISHED FOR THE DECEDENT THELMA LEVY IN JANUARY OF 1992 (`THE JANUARY ANNUITY') FAILS AND THAT THE PORTION OF THE JANUARY ANNUITY DESIGNATING THELMA'S SISTER, VIRGINIA, AS THE BENEFICIARY SHOULD BECOME AN ASSET OF THELMA'S ESTATE."
 {¶ 15} In her sole assignment of error, Thompson contends that the probate court erred when it determined that the per stirpes beneficiary designation in the January annuity should be stricken and the portion of that annuity designated for Virginia or her beneficiaries should pass on to Thelma's estate. We disagree.
 {¶ 16} Initially, Thompson argues that this appeal presents an issue regarding contract interpretation with respect to the January annuity. Thus, she asserts that we should review the appeal under a de novo standard of review.
 {¶ 17} A reviewing court will not reverse a judgment of a trial court that is supported by some competent, credible evidence. Lehmkuhl v. City of Troy (April 29, 2005), Miami App. No. 2004-CA-31, 2005-Ohio-2019. "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967), 10 Ohio St. 2d 230,227 N.E.2d 212. In the instant case, the probate court conducted a one-day trial and heard evidence from both parties with respect to the negotiation and purchase of the three annuities, particularly the January annuity, which lies at the crux of this litigation.
 {¶ 18} The specific contractual terms in each annuity are not issue here, as Thompson suggests. Rather, the main issue in this appeal is whether the probate court abused its discretion when it found that Virginia exceeded her authority under the power of attorney granted to her by Thelma when she and Matt Buehrer, Thrivent's salesperson, added the per stirpes designation to the January annuity without Thelma's consent. Thus, we will review this matter under an abuse of discretion standard.
 {¶ 19} An abuse of discretion connotes more than an error of judgment; it implies the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. In applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe I (1991),57 Ohio St.3d 135, 137-138.
 {¶ 20} We find no merit to Thompson's contention that the probate court did not have jurisdiction to void the per stirpes designation on the January annuity because she was not responsible for making said designation. As Jan correctly notes, the probate court has plenary power at law and in equity to fully dispose of any matter that is properly before it pursuant to R.C. § 2101.24(C). The probate court also has jurisdiction to hear and determine actions involving the misuse of a power of attorney pursuant to R.C. § 2101.24(B)(1)(b). Virginia's alleged misuse of the power of attorney granted to her by Thelma provided the probate court with jurisdiction to determine whether the per stirpes designation on the January annuity should be voided.
 {¶ 21} A power of attorney is authorizing an agent, known as an "attorney in fact," to perform specific acts on the principal's behalf. Testa v. Roberts (1988),44 Ohio App.3d 161, 164, 542 N.E.2d 654. "[A] general, durable power of attorney does not authorize attorneys-in-fact to transfer the principal's property to themselves or to others, unless the power of attorney explicitly confers this power. An attorney-in-fact may not make gratuitous transfers of the principal's assets unless the power of attorney from which the power is derived expressly and unambiguously grants the authority to do so." Rasnick v. Lenos
(June 13, 2005), Butler App. No. CA2004-02-033, 2005-Ohio-2916, citing MacEwen v. Jordan (March 28, 2003), Hamilton App. No. C-020431, 2003-Ohio-1547.
 {¶ 22} Evidence was presented at trial which demonstrated that Virginia purchased the January annuity using the power of attorney granted by Thelma and that she also requested that the annuity contain a per stirpes designation. It is undisputed that the per stirpes designation changed the previous ownership and beneficiary designations that had been in place on the certificates of deposit which were used to purchase the January annuity. While one of the CD's that was liquidated had been executed by Thelma to name Virginia as the payable on death (P.O.D.) beneficiary, the other two CDs that were liquidated were jointly owned by Virginia and Thelma and were designated "Virginia Lutz or Thelma Levy." Thus, had the CDs not been liquidated, they would have been payable to Thelma or her estate because Virginia predeceased Thelma.
 {¶ 23} Pursuant to the language in the power of attorney document executed by Thelma, Thompson argues that Virginia clearly had the authority to sign the January annuity on Thelma's behalf. While we agree with that statement, we also agree with the probate court that the power of attorney granted to Virginia did not give her the right to add the per stirpes language on the January annuity which was not included on nor consistent with any of the CDs used to purchase the annuity. Thus, Virginia exceeded her authority under the power of attorney. As a result, the probate court correctly voided the per stirpes designation on the January annuity, thereby allowing said annuity to pass on to Thelma's estate.
 {¶ 24} Lastly, evidence was presented to the probate court which demonstrated that Thelma was unaware of the per stirpes designation on the January annuity in the form of the contradictory testimony of Matt Buehrer, Thrivent's salesperson. At trial, Buehrer testified that he thoroughly discussed the annuities, including the per stirpes beneficiary designation, with Thelma. However, Buehrer also testified that he and Thelma never discussed what would happen to the funds in the January annuity should Virginia predecease her. Had Thelma and Buehrer thoroughly discussed the per stirpes designation, it would have been incumbent upon him to have explained this to her during their discussion. In light of that inconsistency, the trial court had ample reason to discount Buehrer's testimony concerning what he and Thelma discussed in relation to the beneficiary designation on the January annuity.
 {¶ 25} After a thorough review of the record, we find that the trial court did not abuse its discretion when it found that the per stirpes designation in the January annuity was void in light of the improper actions taken by Virginia in creating the annuity. Thus, the funds originally earmarked for Thompson by virtue of the void language in the January annuity must pass back into Thelma's estate to be divided amongst Jan Levy, his ex-wife, and their children.
 {¶ 26} Thompson's sole assignment of error is overruled.
 III {¶ 27} Thompson's sole assignment of error having been overruled, the judgment of the probate court is affirmed.
Grady, P.J. and Fain, J., concur.