**KNEISLY, In Re**
**KNEISLY v PENQUITE**

Ohio Appeals, 2nd Dist, Clark Co

No 384. Decided July 20, 1938

Arthur J. Todd, Springfield, and Malcolm E. Spencer, Springfield, for appellant.
Keifer & Keifer, Springfield, and W. W. Witmeyer, Springfield, for appellee.

**OPINION**

By THE COURT

This cause is in this court upon appeal from a judgment in the Court of Common Pleas of Clark County, Ohio, upon questions of law. It had its origin in a proceedings in Probate Court, numbered 15885, on a complaint filed in that court by Emma E. Kneisly, executrix of the estate of Aaron S. Kneisly.

It was alleged in this complaint that Aaron S. Kneisly died testate on the 7th day of June, 1933, leaving surviving him the complainant, then seventy-two years of age, and a daughter, then forty-three years of age; that the complainant and the daughter were appointed executrices of said estate; that the daughter has since deceased and the complainant is the surviving executrix . It is asserted that Aaron S Kneisly was, during his lifetime, the owner of certain bonds, in the sum of $3,000.00, which complainant believes belong to the assets of the estate, and have not been delivered into the possession of the legal representatives thereof. It is further stated that complainant believes that one, Pearl P. Penquite, the surviving spouse of Susie Penquite, deceased, now has said bonds in his possession, and has, therefore, concealed and is now concealing said bonds, in fraud of the rights of the complainant and others; and that said Pearl P. Penquite refuses to deliver them to the complainant. The complainant-executrix prays that a writ of citation issue against Pearl P. Penquite requiring him to appear before the court and be examined touching the matters of the complaint.

The cause was heard in Probate Court on said complaint, and that court found that Pearl P. Penquite is guilty of having concealed the bonds, and it was adjudged that Emma E. Kneisly, as executrix of the estate of Aaron S. Kneisly, recover against Pearl P. Penquite the sum of $3,000.00, with 10 per cent penalty. A motion for a new trial was filed and overruled, and the cause was appealed to the Court of Common Pleas. Upon appeal on questions of law, it was found by that court that the judgment of the Probate Court was manifestly against the weight of the evidence; the judgment was reversed, and the Court of Common Pleas proceeded to render the judgment

## 642

that the complaint be dismissed. From this judgment notice of appeal on questions of law was filed, and the case is before this court.

## OPINIONS OF THE COURT BELOW

We are not favored with an opinion of the Probate Court at the time he originally decided the case, but have a statement made at a later date that he finds that the testimony of Warren Spence introduced after the first decision, was vague and uncertain, and furnishes no reason for changing or reversing former decision.

The decision of the Common Pleas Court is more informative in stating reasons. The court takes the position that it was incumbent upon the complainant to support her claim by a preponderance of the evidence, not only that appellant has the bonds in question but that they belong to the estate of her decedent, and that the appellant conceals or unlawfully withholds the same from her, that is, that the title to the same was in the said Aaron S. Kneisly at the time of his death, and is now by operation of law, in her as executrix.

The court below holds that the delivery to Susie K. Penquite is amply supported by the evidence of all the witnesses, and that the intention of the donor to divest his title was established.

## THE LAW

On the theory that the question at issue is whether or not Aaron S. Kneisly while living made a voluntary gift to his daughter, Susie K. Penquite, which divested him of his title and invested her with the same, we need not go far to ascertain the principles controlling gifts inter vivos in the state of Ohio.

In Boles, appellee v Toledo Trust Co., appellant, 132 Oh St 21, the matter is discussed with clarity, and the holding of the court is pertinent to the question before us.

"1. The essentials of a valid gift inter vivos are (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it.

"2. To support such a gift, clear and convincing evidence is required.

"6. To sustain a gift, evidence of the alleged declarations of the donor on the subject is admissible, but such declarations to establish the essential fact of delivery, must include the statement of delivery, or facts from which actual delivery may reasonably be inferred."

The court quotes with approval a number of cases from which we may deduce the following principles: A gift inter vivos is a voluntary and gratuitous transfer of personal property by one to another, and it is essential to its validity that the transfer be executed. It has no reference to the future but goes into immediate and absolute effect. To render the gift complete there must be an actual delivery of the chattel, and without such delivery the title does not pass. The donor must part not only with possession but with dominion and control.

"An intention to give is not a gift, and so long as the gift is left incomplete, a court of equity will not interfere and give effect to it. Gifts inter vivos like gifts causa mortis, are watched with caution by the courts, and to support them clear and convincing evidence is required."

The court states that testimony relating to alleged declarations that the donor had given securities are competent and relevant as bearing upon the main issue in the case. The court quotes with approval in effect that the rule sustained by reason of public policy and the greater weight of authority is that the fact of delivery must be shown by other evidence than the mere declaration of the donor, when the declaration can go no further than to express a gift, and it does not either state a delivery or facts from which actual delivery may be inferred.

"The law looks upon the repetition of statements of this sort with very great care and caution in any kind of a case, and, when the statements are depended upon to carry conclusions of law, as well as of fact, the statements attributed to the donor must include statements of all the facts necessary to constitute the conclusion."

Speaking of a declaration, the court quotes a case to the effect that such a statement seems to assume a declaration

of the fact of delivery which is not in evidence.

"The declarant may have been wholly ignorant of the law that no gift is valid without delivery, and the trier of facts is left to mere conjecture that the declaration involved anything more than a mistaken belief that a valid gift had been made."

"Until the declaration may be seen to include a statement of delivery as a matter of fact, it is not evidence of a delivery."

Another case is quoted to the effect:

"It is now well settled that the declaration of a donor that he had given the property in controversy to the claimant thereof will not perfect a gift incomplete for want of actual delivery, and the fact of delivery must be shown by other evidence than the mere declaration of the donor."

See:

Gano v Fisk, 43 Oh St 462, at p. 470,
Flanders v Blandy, 45 Oh St 113,
McCoy, Exr. v Glosser, 8 Oh Ap 145.

Within the limits of the principles stated in these cases, we may find all the Ohio law that is necessary to determine the case at bar.

The assignment of errors is to the effect that the decision, finding and judgment of the Court of Common Pleas of Clark County, Ohio, are not sustained by sufficient evidence and are contrary to law, and against the manifest weight of the evidence.

## CLAIMS OF COUNSEL

The question being whether or not there was a valid gift inter vivos from the father to the daughter, the claims of counsel are narrow, but are distinctly opposed.

Counsel for appellant asserts that the evidence conclusively proves that the bonds in question were the property of Aaron S. Kneisly, and that unless disposed of by the decedent during his lifetime, they belong to his estate.

This claim is stoutly denied by the appellee. On page 2 of the brief, appellee denies that the evidence shows that Aaron S. Kneisly gave the bonds to his daughter for safe-keeping at the time they were purchased by him; the appellant's contention being that there is no testimony to show that the bonds were put in the daughter's hands for safe-keeping, but that the gift was complete at the time of the purchase of the bonds by Mr. Kneisly.

Before we can find that a gift inter vivos has been proved, clear and convincing evidence must be adduced establishing the delivery with the then present intent to make the gift. A delivery that may have been made to the daughter for the purpose of safe-keeping, without any intention to then irrevocably transfer the title to her, cannot ripen into a subsequent delivery which would support a gift, by declarations of the alleged donor that he had given the bonds to his daughter. The delivery must be proved by competent evidence, as carrying out the then present intention of making a gift. To render the gift complete there must be an actual delivery so far as the nature of the property will permit, and without such a delivery the title does not pass. The fact of delivery must be shown by other evidence than the mere declaration of the donor that he had made a gift.

## THE EVIDENCE

With these principals in mind, we examine the evidence, which we must necessarily do, and condense the facts. Each counsel detailed their conception of the effect of the evidence, and of course their conclusions are not in harmony.

## STIPULATION

It is stipulated that Aaron S. Kneisly died on June 7, 1933, leaving his widow and daughter his only heirs-at-law; that a will was probated and letters issued to his widow and daughter; that W. W. Witmyer was named as attorney representing the executrices; that appraisers were named in the appraisement had on June 29, 1933, which was afterwards filed; that in this inventory there was not included Federal Land Bank Bonds, par value $3,000.00. Susie K. Penquite, the daughter, died March 28, 1934, and the widow is the sole executrix; the will of Susie K. Penquite was probated and Pearl P. Penquite is acting as executor.

Pearl P. Penquite was examined in behalf of the complainant as on cross-examination. He is the husband of Susie Penquite and as such takes all her estate under her will:

**Pearl P. Penquite:**

"Q. Did Mr. Kneisly ever turn over to you any Federal Land Bank bonds?

A. No. They were left at the bank, he never saw the bonds.

Q. What was the transaction under which you obtained possession of certain bonds?

A. They were left in an envelope that

my wife had written on 'Mr. or Mrs. Pearl Penquite' at the bank, and I was told to place them in a safety deposit vault when they came from Washington or wherever they came from.

Q. Who purchased the bonds?

A. I cannot say.

Q. Did your wife?

A. I cannot say as to that—She made several purchases of things I knew nothing about.

Q. Do you know who bought the Federal Land Bank bonds?

A.. As a matter of fact my wife said her father bought them."

The questions and answers develop that Pearl P. Penquite took the bonds and put them in a safety deposit vault. They were purchased in 1927, or before; that during the time he had them in his possession he clipped the coupons, placing one-half to his bank account and the other half used as cash; his wife had nothing to do with the cashing of the coupons; after Kneisly's death, the coupons were paid to Penquite's wife in their common checking account; the proceeds were not paid to Mrs. Kneisly after the death of her husband.

"Q.—30. When you took possession of these bonds what was your idea as to whom they belonged?

A. At that time my idea was that they belonged to Mr. Kneisly. I put them in the safe.

Q. When you put them in the safe it was with the understanding that they were bonds that belonged to Mr. Kneisly?

A. Yes."

Mr. Penquite put them in a safety deposit box in 1927; afterwards, his wife told him the bonds were given her by her father, and he took her word for that; she told him this prior to 1930, after which time he gave part of the income of the bonds to Mr. Kneisly. His wife had stated the bonds were given to her with the understanding that in case Kneisly was short of cash the coupons should be deposited to his account, otherwise to her. Mr. Kneisly asked him to put the coupons to his account because he needed cash. Upon request he did this, but when Mr. Kneisly did not ask for them he put them to his and his wife's joint account. The only thing he knew about the gift was that his wife told him her father had given them to her—.

"Q. Did Mr. Kneisly ever tell you that?

A. No."

The statement of Mrs. Penquite, the wife, the possession and the fact that Mr. Kneisly never asked for the bonds, and the subsequent statements of Kneisly as to his gift to his daughter, was the only evidence that the bonds were the property of Mrs. Penquite, and after being so told by the wife he paid the interest to Kneisly on request. His recollection is hazy as to whether Kneisly told him to put the bonds in the safety deposit box; they were in an envelope and sealed, and he does not know whether he got them or his wife. The inscription on the envelope "Mr. or Mrs. Penquite" was in his wife's handwriting. The envelope was turned over to him or to his wife—he does not know which, "I think she got it"; they were bonds Kneisly purchased with his own money; Mrs. Kneisly had joint safety deposit box with him.

**Emma Kneisly:**

Emma Kneisly, the widow, states that her husband bought the bonds at the Farmers National Bank; does not know what he did with them at the time; he had no safety deposit box; Pearl Penquite had them later; her husband, Mr. Kneisly, got the income; he told her so; she got the interest for a year after Mr. Kneisly died; she did not hear what was going on at the time of the inventory; cannot remember being asked whether there was anything else to go in; she signed without reading it or hearing it read; she was afraid right away that the bonds were not included in the estate, but did not say very much on account of Susie Penquite who was sick; after Susie's death she spoke about it to Mr. Witmeyer, and stated that the bonds ought to be in the estate; Mr. Witmeyer did not think so.

**Warren Spence:**

Warren Spence, a witness produced after the parties had rested testified in part—

"A. Mr. Knisely told me that he gave Susie some bonds or stock, whatever you want to call it; I don't know what you call it here; that he wanted to help them while he was living and he had it so he could.

Q. So, if I get it straight, Mr. Knoisly told you that he wanted to help Susie while she was living?

A. While he was living.

Q. So he gave some bonds or some stocks

or some bonds and stocks, you don't know what they call them?

A. I don't know; I didn't see them."

### THE EXHIBITS

The exhibits consisting of the inventory, which shows no enumeration of bonds, but shows a net estate of $11,621.31; the account signed by Mrs. Kneisly, as executrix, does not disclose the bonds; the preliminary notice of inheritance tax shows the total disclosed by the inventory, and no mention of bonds. The last will and testament of Aaron S. Knisely was dated December 21, 1921, and devised the estate to his wife, with the exception of the provision of Item V, where he gave to Susie K. Penquite, his daughter, $3,500.00; to be taken out of his chattels after his decease; the small book testified to by Mrs. Kneisly as disclosing the receipt of the interest on the bonds, shows some indication of erasures.

There is other testimony in which witnesses stated that the bonds did not belong to the estate of Mr. Kneisly because he had given them to Susie, but none of this evidence appears to be based upon any direct declaration of Mr. Kneisly himself, with the exception of that of Warren Spence, the appraiser.

We have gone over the file, briefs, and the evidence in the above-entitled cause.

The matter of delivery, of course, is an element of gift, and in the reported cases the question of delivery is very generally the matter in controversy. In most of the reported cases the donee did not have possession, or at least the physical facts were such that possession of donee was denied.

In the instant case there is no question that the physical possession was in Mrs. Penquite, or her husband, either or both, at all times after bonds were procured. Penquite's action in receiving the bonds, placing them in an envelope and then in their joint safety deposit box was on instructions from his wife. It is the present contention of Mrs. Kneisly, surviving executrix, that they were so placed by Mr. Kneisly for safe-keeping. There is no evidence supporting this contention. It is true Mr. Penquite makes a statement that he thought they were Mr. Kneisly's bonds. What he may have thought about it would have no probative force.

Admissions of Mr. Kneisly supporting the gift would be competent as declarations against interest. Some of these declarations were not to the effect that he intended to make the gift, but that he had made it.

This, coupled with the proof of possession, in our judgment amply supports the theory of gift.

It is true that it does not expressly appear in detail that Mr. Kneisly actually delivered the bonds to his daughter, or at the same time said anything or indicated any state of mind from which it might be concluded that he then had intent and purpose to transfer the title to his daughter. But when, after the facts support the conclusion that the bonds were in the possession of the daughter, her father states that he had theretofore completed a gift to her, this permits the conclusion that all of the elements essential to a gift inter vivos were present when the gift which the donor admits was made.

Judgment of the Court of Common Pleas affirmed.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.