OPINION
{¶ 1} Defendant-appellant, Ernest B. Lenos, Jr., appeals from an entry of the Butler County Probate Court granting judgment against him and in favor of plaintiff-appellee, Mary Alice Rasnick, Executrix of the Estate of Ernest B. Lenos, Sr. (hereinafter, "decedent"), in the amount of $72,193.06, plus a penalty of 10 percent.
 {¶ 2} On November 29, 2000, decedent executed a "Last Will and Testament," which stated, in pertinent part, as follows:
 {¶ 3} "ITEM II. I give, devise and bequeath a Certificate of Deposit at First National Bank of Southwestern Ohio in the original amount of Thirty Thousand Dollars ($30,000.00), plus all accumulated interest earned thereon to my granddaughter, MARY ALICE RASNICK, to be hers, absolutely and in fee simple.
 {¶ 4} "ITEM III. I give, devise and bequeath to my son, ERNEST B.LENOS, JR., any real estate that I may own at the time of my death; any vehicle that I may own at the time of my death; all of my household goods and furnishings; all of my tools and any other items of personalty which my son may elect to retain, save and except, any bank accounts which may be in my name or jointly with any other individual, absolutely and in fee simple, per stirpes.
 {¶ 5} "ITEM IV. All the rest, residue and remainder of my estate, real and personal, of whatever kind or description and wheresoever situate, of which I may die seized or possessed, or to which I may be entitled at the time of my death, or which I may have the power to dispose of by Will, I give, devise and bequeath to my son, ERNEST B. LENOS, JR. and my granddaughter, MARY ALICE RASNICK, absolutely and in fee simple, per stirpes, share and share alike.
 {¶ 6} "ITEM V. I hereby nominate and appoint my granddaughter, MARYALICE RASNICK, to be Executrix of this my LAST WILL AND TESTAMENT."
 {¶ 7} On February 15, 2002, decedent executed a "Power of Attorney," naming appellant as his attorney in fact. The instrument stated, in pertinent part, as follows:
 {¶ 8} "I, Ernest B. Lenos, Sr., of Hamilton, Ohio, hereby appoint my son, Ernest Lenos, Sr., [sic] of Hamilton, Ohio, as my attorney in fact, to take charge of, manage and conduct all my business and personal affairs, in the event of my disability or incapacitation, and for such purpose to act for me in my name and place. Without limitation on the powers necessary to carry out this general purpose, my attorney in fact is authorized:
 {¶ 9} "* * *
 {¶ 10} "B. To receive money or property paid or delivered to me from any source;
 {¶ 11} "C. To deposit funds in, make withdrawals from, or sign checks or drafts against any account standing in my name, individually or jointly, at any bank or any other depository; to cash coupons, bonds, or certificates of deposit do [sic] endorse checks, notes or other documents in my name; to have access to, and place items in or remove them from any safety deposit box standing in my name individually or jointly, and otherwise to conduct banking transactions or business for me in my name[.]"
 {¶ 12} Decedent suffered from a serious heart condition and spent most of the last year of his life in the hospital. He died on November 17, 2002. He was 76 years old. In the two months preceding decedent's death, appellant, acting ostensibly pursuant to his power of attorney, made a number of withdrawals from decedent's various accounts, closing each of them out. The withdrawals totaled $81,223.12. Appellant deposited the money into a new account in his own name.
 {¶ 13} Following decedent's death and the admission of his will to probate, appellee was formally appointed executrix of decedent's will. On March 19, 2003, appellee brought a complaint against appellant pursuant to R.C. 2109.50, alleging that he "wrongfully concealed, embezzled or conveyed away, or is now, or has been, in possession of monies" that belonged to decedent's estate, and which, therefore, should be returned to it.
 {¶ 14} A bench trial was held on appellee's complaint in October 2003. At trial, appellant testified, without objection, that decedent had told him to withdraw the money from decedent's accounts and put the funds in his own name. Appellant also testified that appellant told him to make sure that any of his nursing home expenses were paid out of the funds, along with "any repairs or anything that had to be done to his [appellee's] home," and that "anything that's left, son, if I pass away, anything that's left its [sic] yours."[1] During closing arguments, appellant argued that decedent's telling him to transfer the funds to appellant's own account constituted an "inter vivos gift" of the funds to him, and that while "there may have been a condition" placed on the gift such as paying for his nursing home expenses, if there were any, that "conditional event * * * never occurred."
 {¶ 15} On December 8, 2003, the probate court issued an opinion finding that appellee had proved that appellant was wrongfully in possession of $81,223.12 that belonged to decedent's estate. In support of its decision, the probate court found that the power of attorney executed by decedent did not "explicitly confer" upon appellant the authority to make gifts to himself or anyone else. The probate court also found that appellant had failed to produce clear and convincing evidence that the transfer of funds amounted to a valid inter vivos gift, as appellant had contended, because he failed to establish, among other things, that "decedent intended to relinquish dominion and control over these funds." Finally, the probate court found that appellant had failed to meet his burden of going forward with sufficient evidence to rebut the presumption of undue influence that arose from his having transferred funds from decedent's accounts to his own at the time that he had a fiduciary relationship with decedent as his attorney in fact.
 {¶ 16} On January 28, 2004, the probate court issued a final, appealable judgment entry, finding that appellant wrongfully possessed $81,233.12, which rightfully belonged to the estate. After crediting appellant for paying decedent's funeral and other expenses, the probate court found that appellant owed decedent's estate $72,193.06, plus a 10 percent penalty pursuant to R.C. 2109.52.
 {¶ 17} Appellant now appeals, raising the following as his sole assignment of error:
 {¶ 18} "The trial court erred to the prejudice of defendant-appellant when it determined that defendant-appellant did not have the right to receive the funds from his father's accounts."
 {¶ 19} Appellant raises three arguments in support of this assignment of error. First, he argues that the probate court erred in determining that the power of attorney executed by decedent was insufficient to authorize him to transfer the funds in decedent's accounts to his own, in the form a gift. We disagree with this argument.
 {¶ 20} A power of attorney is a written instrument authorizing an agent, known as an "attorney in fact," to perform specific acts on the principal's behalf. Testa v. Roberts (1988), 44 Ohio App.3d 161, 164. "[A] general, durable power of attorney does not authorize attorneys-in-fact to transfer the principal's property to themselves or to others, unless the power of attorney explicitly confers this power. An attorney-in-fact may not make gratuitous transfers of the principal's assets unless the power of attorney from which the authority is derived expressly and unambiguously grants the authority to do so." MacEwen v.Jordan, Hamilton App. No. C-020431, 2003-Ohio-1547.
 {¶ 21} Contrary to what appellant contends, there was no provision in the power of attorney executed by decedent that "expressly and unambiguously" authorized appellant to make gratuitous transfers of decedent's funds to himself or others. Section B of the power of attorney, which authorized appellant "[t]o receive money or property paid or delivered to [decedent] from any source[,]" did not, as appellant contends, provide appellant with "full authority" to receive money that was already being held by decedent; instead, that provision merely provided appellant with authority to receive money or property that waspaid or delivered to the decedent.
 {¶ 22} Furthermore, Section C of the power of attorney, which authorized appellant "to make withdrawals from * * * any account standing in [decedent's] name," did not provide appellant with express and unambiguous authority to make a gift to himself from decedent's account. Instead, that language, when read in context with the remainder of the provision, merely authorized appellant to take certain actions "to conduct banking transactions or business for [decedent] in [decedent's] name[,]" including to deposit funds in, and make withdrawals from, his accounts. It did not "expressly and unambiguously" authorize appellant to make withdrawals from decedent's accounts to make gifts to himself. CompareMacEwen v. Jordan, 2003-Ohio-1547 at ¶ 2, where the power of attorney expressly granted the attorney in fact the power "[t]o make gifts at any time, or from time to time, to anyone, including my Attorney-in-Fact, in such amounts and using such property as my Attorney-in-Fact shall determine."
 {¶ 23} In his second argument, appellant argues that the trial court erred in finding there was insufficient evidence to prove that decedent had made a gift of the funds to him. We disagree with this argument.
 {¶ 24} At trial, appellant argued that decedent's telling him to transfer the funds to his account was an "inter vivos" gift, and while "there may have been a condition" imposed on that gift, namely, to pay his nursing home expenses, that condition never occurred. The trial court rejected appellant's argument on the basis that decedent's direction to appellant that the money be used to pay for decedent's nursing home care and for any repairs that had to be done to decedent's house, was "inconsistent with a complete relinquishment of dominion and control of the funds," and that, therefore, appellant had failed to establish that decedent had made a valid inter vivos gift to appellant. See Bolles v.Toledo Trust Co. (1936), 132 Ohio St. 21, paragraph one of the syllabus.
 {¶ 25} The trial court was correct in finding that appellant had failed to prove by clear and convincing evidence that decedent had made an inter vivos gift of the funds to him. See id. Appellant does not challenge this finding. Instead, appellant raises an argument that he failed to raise in the proceedings in front of the probate court, namely, that decedent had actually made to him either "a conditional gift" or a "gift causa mortis." However, appellant did not raise this argument at trial. Generally, an appellate court will not consider any alleged error which the party complaining of the error could have, but did not, call to the trial court's attention at a time when the alleged error could have been corrected or avoided, altogether. McKimm v. OhioElections Comm., 89 Ohio St.3d 139, 149, fn. 3, 2000-Ohio-118. Accordingly, we will not address this issue here. Id.[2]
 {¶ 26} In his third argument, appellant argues that the probate court erred in finding that he failed to rebut the presumption of undue influence that arose as a result of his making a gift to himself of decedent's funds when he was serving as decedent's attorney in fact. However, because we have upheld the probate court's determinations that appellant lacked authority under the durable power of attorney to transfer decedent's funds to his own account, and that appellant failed to prove that decedent had made to him an inter vivos gift of the funds, and because appellant failed to raise the issues of conditional gift or gift causa mortis in the proceedings in the probate court, the issue of whether appellant exercised any undue influence over decedent has been rendered moot.
 {¶ 27} Appellant's sole assignment of error is overruled.
 {¶ 28} Judgment affirmed.
Young, P.J., and Valen, J., concur.
Valen, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution. At the time this case was submitted, Judge Valen was a duly elected judge of the Twelfth District Court of Appeals.
[1] Appellant's testimony regarding what decedent had told him appears to be hearsay testimony, which is inadmissible pursuant to Evid.R. 802. Furthermore, such testimony would not have fit within the exception to the hearsay rule for statements of a deceased person under Evid.R. 804 (B)(5), since that rule exists for the benefit of the decedent's representative to permit the decedent to "speak from the grave" to rebut the testimony of an adverse party, Bobko v. Sagen (1989),61 Ohio App.3d 397, 409. It does not exist for the benefit of a party, such as appellant, who is opposing the decedent or his or her representative. See, e.g., Bilikam v. Bilikam (1982), 2 Ohio App.3d 300,305. However, appellee did not raise a hearsay objection to appellant's testimony about what decedent had told him; therefore, the issue is not before us for consideration.
[2] Furthermore, appellant's argument regarding conditional gift relied primarily on the theory of gift causa mortis, which does not apply to this situation, anyway, since one of the required elements for a gift causa mortis, is that the gift "must be made in the last illness of the donor, while under the apprehension of death as imminent[.]" In re Estate ofMcGeath (2001), 143 Ohio App.3d 835, 838. In this case, there was insufficient evidence presented to demonstrate that the gift was made under these circumstances.