[Cite as *Mancz v. McHenry*, 2012-Ohio-3285.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| BARRY W. MANCZ, Fiduciary of | : | |
| The Estate of AUDREY KIRBY | : | Appellate Case No. 24728 |
| | : | |
| Plaintiff-Appellee | : | Trial Court Case No. 2009-MSC-355 |
| | : | |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| CALLISTA McHENRY | : | Court, Probate) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of July, 2012.

. . . . . . . . . . .

BARRY W. MANCZ, Atty. Reg. #0011857, Rogers & Greenberg, LLP, 40 North Main Street, Suite 2160, Dayton, Ohio 45423
and
HARRY G. BEYOGLIDES, JR., Atty. Reg. #0018959, 130 West Second Street, Suite 1900, Dayton, Ohio 45402
         Attorneys for Plaintiff-Appellee

RICHARD A. BOUCHER, Atty. Reg. #0033614, JULIA C. KOLBER, Atty. Reg. #0078855, and LAUREN E. GRANT, Atty. Reg. #0087315, Boucher & Boucher Co., L.P.A., 12 West Monument Avenue, Suite 200, Dayton, Ohio 45402
         Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Callista McHenry appeals from a judgment of the Montgomery County Court of Common Pleas, Probate Division, finding her guilty - pursuant to R.C. 2109.50 - of concealing, embezzling and conveying assets of the estate of Audrey Kirby.   For the reasons set forth below, we affirm.

## I.    Relevant Facts and Course of Proceedings

{¶ 2}    The decedent, Audrey Kirby, lived in Portsmouth, Ohio until 2000 when her children decided that she should move into an independent living facility that had available assisted living care.   At that time, Kirby was 86.   In March 2001, Kirby moved into a studio apartment at the St. Leonard living community in Centerville, Ohio.

{¶ 3}    Prior to the move, in October 2000, Kirby executed a Power of Attorney (POA) appointing her daughter, Callista McHenry, as her attorney-in-fact.   The POA was prepared by Kirby's grandson, Joseph Kirby, a lawyer.   Joseph Kirby later prepared Kirby's Last Will and Testament, which was executed on August 16, 2002.   The will provided that all of her assets were to be divided equally among her children, subject to deductions for two children, Ben and Carolyn, representing specific advances previously made to each of them. In July 2006, Kirby executed a Revocable Trust Agreement.

{¶ 4}    Audrey Kirby died on April 10, 2007 in Montgomery County, Ohio.   Kirby had thirteen surviving children at the time of her death.   Daniel Kirby, a son, was originally appointed as executor of the estate, but resigned.   Thereafter, the court appointed plaintiff, attorney Barry Mancz, as the successor fiduciary.   On December 11, 2009, Mancz filed this

action, claiming that McHenry had breached her fiduciary duties by concealing Kirby's assets from the estate and that she had concealed, embezzled or conveyed away estate assets, in violation of R.C. 2109.50.

{¶ 5}  Following a hearing, the probate court found McHenry guilty of concealing, embezzling, or conveying away assets of the decedent in the amount of $290,975.46.  The court further assessed a ten-percent penalty of $29,097.55 and found McHenry liable to the estate for the total sum of $320,073.01.  From the judgment of the probate court, McHenry appeals.

## II.   The Trial Court Did Not Commit Reversible Error by Failing to Follow the Procedure Set Forth in R.C. 2109.50, in View of Fact that McHenry Appeared in the Action and Answered the Complaint   Without Challenging the Procedure

{¶ 6}  McHenry's First Assignment of Error states as follows: "THE TRIAL COURT ERRED IN FAILING TO FOLLOW THE PROCEDURAL REQUIREMENTS OF OHIO REVISED CODE § 2109.50 AND/OR ABUSED ITS DISCRETION IN DOING SO."

{¶ 7}  McHenry contends that the probate court did not properly follow the procedural requirements of R.C. 2109.50.  Specifically, she contends that the court erred by failing to: (1) issue a citation requiring McHenry to appear; (2) reduce all questions and answers to writing; (3) file the writing with the court; (4) allow McHenry to testify that the decedent gave monies to her; and (5) allow all necessary and relevant testimony.

{¶ 8}  Mancz argues that McHenry waived any procedural failings by the probate

court because she did not raise the issue until the hearing was complete, in her post-trial brief. He further contends that even if the probate court did err, McHenry cannot show any prejudice stemming from the probate court's actions.

{¶ 9}     From the judgment, it appears that the probate court treated this action as one brought pursuant to R.C. 2109.50.   That statute provides, in pertinent part, as follows:

> Upon complaint made to the probate court of the county having jurisdiction of the administration of a trust estate or of the county wherein a person resides against whom the complaint is made, by a person interested in such trust estate or by the creditor of a person interested in such trust estate against any person suspected of having concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate, said court shall by citation, attachment or warrant, or, if circumstances require it, by warrant or attachment in the first instance, compel the person or persons so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint.* * *
>
> The probate court may initiate proceedings on its own motion.
>
> The probate court shall forthwith proceed to hear and determine the matter.
>
> The examinations, including questions and answers, shall be reduced to writing, signed by the party examined, and filed in the probate court.
>
> If required by either party, the probate court shall swear such witnesses as may be offered by either party touching the matter of such complaint and

cause the examination of every such witness, including questions and answers, to be reduced to writing, signed by the witness, and filed in the probate court.

**{¶ 10}** A proceeding brought pursuant to this statute "is a special proceeding of a summary, inquisitorial character whose purpose is to facilitate the administration of estates by summarily retrieving assets that rightfully belong there." *State ex rel.Goldberg v. Maloney*, 111 Ohio St.3d 211, 2006-Ohio-5485, 855 N.E.2d 856, ¶ 23.

**{¶ 11}** We first address the claim that the probate court was without jurisdiction over her because the court did not issue a citation for McHenry's appearance. McHenry does not cite any statutory or case authority for the proposition that this failing renders the proceedings void. The First District Court of Appeals has held that when a person accused pursuant to R.C. 2109.50 of concealing or embezzling assets voluntarily appears before the probate court, is made aware of the allegations, and proceeds to defend against those allegations, any claim of lack of personal jurisdiction over the person is waived. *Bender v. Haynes*, 1st Dist. Hamilton No. C-100802, 2011-Ohio-6769, ¶ 16. In *Bender*, the court noted that "at no point during these proceedings did [the accused] argue that the probate court lacked personal jurisdiction over her." *Id.*

**{¶ 12}** Similarly, while McHenry was not issued a citation, she was properly served with the complaint. She appeared before the probate court, filed an answer and proceeded to defend against the allegations raised against her. At no time prior to the hearing did she object to the lack of a citation. The complaint, while setting forth other

claims, clearly stated a cause of action for violation of R.C. 2109.50. McHenry has not alleged any prejudice stemming from the lack of a citation. Thus, even if the probate court did err by failing to issue a citation mandating McHenry's appearance, any error was harmless; McHenry did appear and defend against the complaint.

{¶ 13} We next address the fact that the probate court did not reduce all questions and answers to writing signed by the witnesses or file the writing with the court. This "provision is not mandatory but directory." 2 Angela C. Carlin, *Baldwin's Ohio Practice, Merrick-Rippner Probate Law*, Section 57:14, 161 (2008), citing *Sheets v. Hodes*, 142 O.S. 559, 53 N.E.2d 804 (1944). Thus, we cannot say that the probate court committed reversible error by failing to reduce the examination to writing signed by the witnesses. The examination of all the witnesses was recorded by a court reporter and is part of the probate court's record. McHenry does not contend that the transcript is not a true and correct recording of the proceedings or that any testimony was incorrect. Therefore, she has not been prejudiced by the probate court's failure to have followed the procedure directed by the statute.

{¶ 14} Next McHenry contends that the probate court erred because it did not permit the introduction of testimony regarding her claim that the decedent gave monies to her while still alive. She refers to a portion of the transcript that she claims shows that the probate court "actually ruled that a defense [that the monies were a gift] must be present in the Answer." She further contends that since she did not present that defense in her answer to the complaint, the court ruled that she could not offer testimony on that subject. The cited transcript pages do not support this claim. The

transcript reflects that the probate court did not sustain the fiduciary's objections to the gift testimony on the basis that a defense of gift was not set forth in McHenry's answer. The court sustained the objection to the gift testimony because it involved hearsay testimony concerning a statement by the decedent, which, as discussed in Part III below, was a correct ruling.

{¶ 15} Finally, we turn to the claim that the trial court did not permit all necessary and relevant testimony. Specifically, McHenry contends that the court erred by not permitting the introduction of testimony regarding statements made by the decedent that she claims were necessary to show that her actions were taken with the authorization of the decedent, that any monies taken by her were given to her by her mother, or both. Because this argument is the subject of the Second Assignment of Error, we will address it in Part III, below.

{¶ 16} As Mancz points out, McHenry did not object to any claimed procedural errors with regard to R.C. 2109.50 until she filed her post-trial brief with the court. Because of this, Mancz argues that McHenry waived any procedural errors. We agree. The complaint clearly sets forth a cause of action under R.C. 2109.50. McHenry was aware of the nature of the proceeding. And none of the claimed procedural errors resulted in prejudice to McHenry.

{¶ 17} McHenry's First Assignment of Error is overruled.

### III. McHenry's Testimony Concerning the Decedent's Statements to her Was Properly Excluded

**as Hearsay Under Evid. R. 802 and 804(B)(5)**

{¶ 18}   McHenry's Second Assignment of Error states: "THE EXCLUSION OF TESTIMONY BY McHENRY AND OTHER WITNESSES AS TO STATEMENTS BY THE DECEDENT WAS PREJUDICIALLY ERRONEOUS AND/OR AN ABUSE OF DISCRETION."

{¶ 19}   In this assignment of error, McHenry asserts that the probate court should have allowed the admission of evidence regarding Kirby's stated intent for the disposition of her property.   She refers to numerous passages in the transcript wherein she attempted to recount her mother's statements regarding the disposition of the monies placed in her accounts as well as to statements recounted by other witnesses.

{¶ 20}   McHenry cites cases for the proposition that since the decedent's intent "is crucial and the person accused of concealing assets should not be prohibited from speaking in his own defense, * * * the testimony of the decedent * * * is appropriate and should be admitted into evidence."   See, e.g. *In re Kneisly*, 27 Ohio Law Abs. 641, (2nd Dist. 1938); *Leonard v. State ex rel. Scott*, 3 Ohio App. 313 (1st Dist. 1914).

{¶ 21}   Mancz argues that the cases cited by McHenry all involve the application of R.C. 2317.02, known as the "dead man's statute," which has been abrogated by the adoption of Evid.R. 804(B)(5).

{¶ 22}   In her reply brief, McHenry states that she "is not relying on the abrogated 'dead man's statute' to support her contention that the statements of the decedent should have been admitted to determine whether McHenry concealed assets. But rather, that because several court's [sic] specifically stated that the 'dead man's

statute' did not apply in concealment cases, it stands to reason that Evid.R. 601 and Evid.R. 804(B)(5) are similarly not applicable in concealment cases." She further states that "[t]he applicability of Evid.R. 601 and Evid.R. 804(B) in a R.C. 2109.50 case does not appear to have been decided by an Ohio court, as the undersigned has been unable to locate case law post 1984."

{¶ 23} We begin by noting that the Ohio Rules of Evidence are applicable to "proceedings in the courts of this state, subject to the exceptions stated in division (C) of this rule." Evid.R. 101(A). Neither party claims that any of the exceptions listed in division (C) of Evid.R. 101 are applicable, and we find nothing to indicate that any of the exceptions are applicable.

{¶ 24} Statements made by Kirby constitute inadmissible hearsay pursuant to Evid.R. 802, and do not fit within the exception set forth in Evid.R. 804(B). *MacEwen v. Jordan*, 1st Dist. Hamilton No. C-020431, 2003-Ohio-1547, ¶ 19. *See also Rasnick v. Lenos*, 12th Dist. Butler No. CA2004-02-033, 2005-Ohio-2916, ¶ 14, fn.1, in dictum.

{¶ 25} Evid.R. 804(B) provides, in pertinent part:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

* * *

(5) *Statement by a deceased or incompetent person.*

The statement was made by a decedent * * * , where all of the following apply:

(a) the estate or personal representative of the decedent's estate * * * is

a party;

(b) the statement was made before the death * * * ;

(c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent * * *.

{¶ 26}   From our review of the record, it appears that throughout her testimony McHenry attempted to relay statements made to her by her mother regarding the use of Kirby's monies.   Mancz objected on the basis that the statements of Kirby constituted hearsay.   The probate court agreed.

{¶ 27}   Clearly statements made by a decedent would fall under the general prohibition against hearsay.   The question then is whether Evid.R. 804(B)(5) is applicable.   Mancz, as the representative of Kirby's estate, is a party to the action. Evid.R. 804(B)(5)(a).   The statements were purportedly made prior to Kirby's death. Evid.R. 804(B)(5)(b).   As noted in *Rasnick*, supra, Evid.R. 804(B)(5) "exists for the benefit of the decedent's representative to permit the decedent to 'speak from the grave' to rebut the testimony of an adverse party.   It does not exist for the benefit of a party * * * who is opposing the decedent or his or her representative."   *Id.*, (internal citations omitted).

{¶ 28}   The above case law indicates that in proceedings brought pursuant to R.C. 2109.50, testimony of the decedent is considered hearsay and does not fall within the hearsay exceptions set forth in Evid.R. 804(B)(5).

{¶ 29}   At oral argument, Mancz pointed out that powers of attorney are sometimes drafted with express provisions that allow the attorney-in-fact to make gifts

to himself or to herself under certain specified conditions. This power of attorney did not contain any provisions of this kind.

{¶ 30} McHenry's Second Assignment of Error is overruled.

## IV. Mancz, the Fiduciary, Properly Used R.C. 2109.50 to Seek Recovery of Monies Taken from the Decedent by the Unauthorized Use of a Power of Attorney by the Attorney-in-Fact

{¶ 31} McHenry's Third Assignment of Error is as follows:

{¶ 32} "THE COURT ERRED IN ALLOWING THE ADMINISTRATOR TO USE O.R.C. §2109.50 TO OBTAIN AN ACCOUNTING OF THE ESTATE AND/OR ABUSED ITS DISCRETION IN DOING SO."

{¶ 33} McHenry contends that Mancz improperly used R.C. 2109.50 as a proceeding to obtain an accounting of the assets of the estate and that the probate court erred by permitting him to do so. In support, she cites *In re Leiby's Estate, Leiby v. Cosgrove*, 157 Ohio St. 374, 105 N.E.2d 583 (1952).

{¶ 34} In *Leiby*, the administrator of Leiby's estate brought an action pursuant to Ohio Gen Code § 10506-67 (now R.C. 2109.50) against the book keeper employed by Leiby in his business. *Id.* at 374. The administrator contended that the bookkeeper had concealed or embezzled assets from Leiby's company. *Id.* The facts showed that the bookkeeper would give the decedent his weekly payroll check and that the decedent would also give her authority to withdraw cash for his personal use. *Id.* at 383. The administrator claimed that the bookkeeper did not give the cash withdrawals

to Leiby. *Id.*

**{¶ 35}** We note that *Leiby* did not involve an action to recover specific monies belonging to a decedent's estate. It was an attempt by the administrator to have the bookkeeper account for the monies that passed from the decedent's company through the company payroll account, and for the bookkeeper to account for discrepancies between the amounts paid to the decedent in his weekly payroll check and the total amounts withdrawn upon the decedent's authority. There was never a showing that the cash withdrawals were ever in the bookkeeper's possession except when they were in transit from the company to the decedent, and there was no showing that she placed any of the monies into any personal accounts of her own. The Supreme Court of Ohio held that because the title to the money in question was not in the decedent at the time of his death, the proper vehicle for recovery of the monies from the bookkeeper was an action against the bookkeeper for recovery of the money, or for an accounting, but not the summary proceeding to recover specific property, or the value thereof, title to which was in the decedent at the time of his death, *or to recover property belonging to a trust estate concealed, taken, or disposed of after the appointment of a fiduciary*, provided for in the General Code provision precursor to R.C. 2109.50 . *Id.*, 383-384.

**{¶ 36}** Here, Mancz demonstrated that McHenry, using the power of attorney, had taken assets of the decedent and placed them into McHenry's personal accounts. This is analogous to taking money from a trust estate after the appointment of a trust fiduciary. The attorney-in-fact, like a trustee, is exercising powers over the grantor's

property granted to her by the grantor. It is not analogous to the situation in *Leiby*, in which property was taken from a decedent by a non-fiduciary, before the decedent's death. As the Supreme Court noted in *Leiby*, if the summary statutory proceeding were construed to encompass that situation, then anyone who allegedly received money from a decedent during the decedent's lifetime could have the statutory proceeding used against them to seek a recovery of those monies. *Id.*, 384.

{¶ 37} We also find no support for the claim that Mancz sought to have McHenry file any type of estate accounting as required by the probate statutes. While Mancz did seek an accounting from McHenry as to where the funds taken from the estate had been placed and how used, this does not amount to an accounting as required by the probate statutes. Rather, it was an attempt to have McHenry account for monies expended under the power of attorney, to show that the monies were expended for the decedent's use and benefit, as authorized by the power of attorney.

{¶ 38} McHenry's Third Assignment of Error is overruled.

**V. The Trial Court's Finding that McHenry Took $290,975.46 from Kirby's Funds, for Other than Kirby's Use and Benefit, Without Authority Under the Power of Attorney to Do So, Is Not Against the Manifest Weight of the Evidence; in Fact, Evidence Supports a Finding that McHenry Took Substantially *More* than this Amount**

{¶ 39} McHenry asserts the following for her Fourth Assignment of Error:

{¶ 40} "THE COURT ERRED IN DETERMINING AS A MATTER OF

LAW THE AMOUNT DUE THE ESTATE FROM MCHENRY BASED ON THE UNCLEAR AND CONFUSING RECORD, AND THE LACK OF ACCOUNTING BY THE ADMINISTRATOR AND/OR ABUSED ITS DISCRETION IN DOING SO."

**{¶ 41}**   McHenry contends that the probate court's determination of the amount of funds concealed or embezzled by McHenry is not supported by the evidence.   In support, she argues that the probate court's decision is based upon a "confused and murky" accounting amounting to an obvious "financial morass," which makes it "impossible to explain herein the trial court's accounting or judgment."   She also claims that the probate court did not give her credit for the amounts spent on Kirby's behalf or for her benefit.

**{¶ 42}**   A review of this record reveals that after obtaining the power of attorney, McHenry began moving money from Kirby's account at Charter One Bank into at least six other checking accounts.   The first account was established at National City Bank.   This account was titled in the names of McHenry, Kirby and one of Kirby's sons.   It appears that Kirby wrote the checks for the initial deposits into this account in the sum of $7,000.   McHenry deposited more than $15,000 into this account using Kirby's funds, and all checks written on the National City Bank account were signed by McHenry.

**{¶ 43}**   Thereafter, McHenry opened five other accounts, none of which was titled in Kirby's name.   Two of the accounts were opened in the names of McHenry and her husband.   Two other accounts were titled to McHenry, payable on death to her

husband. Another account was opened in McHenry's name, payable on death to her husband and children.

**{¶ 44}** The evidence supports a finding that McHenry funded all of these accounts with her mother's assets and that none of McHenry's assets funded these accounts. The evidence further shows that McHenry wrote hundreds of checks on these accounts, many of which appear to have benefitted McHenry, not Kirby. For example, McHenry used the funds to pay her mortgage, pay student loans, pay for her own health insurance, and other miscellaneous items that could not be traced as being for Kirby's benefit. Furthermore, there were numerous debit card purchases made throughout the years that McHenry acted as attorney-in-fact for which there is no accounting. McHenry also used her mother's certificates of deposit to fund some of these accounts. She also obtained certificates of deposit, in her own name, using her mother's assets.

**{¶ 45}** Contributing to the confusion is the fact that McHenry appears to have attempted to move monies on a frequent basis from account to account. However, the court was able to properly trace the flow of monies. In total, the court found that McHenry had taken estate assets of $290,975.46. This amount is substantially less than the $448,966 that Mancz alleged was taken from Kirby's funds. Our review of the hundreds of pages of financial exhibits supports a finding that McHenry took *more* from her mother's property than the amount cited by the court. Mancz has not appealed from the judgment.

**{¶ 46}** The record contains competent, credible evidence that McHenry took

monies from her mother, without authority, in excess of the $290,975.46 that the probate court found, which were not used for Kirby's benefit. Therefore, McHenry's Fourth Assignment of Error is overruled.

{¶ 47} McHenry's Fifth Assignment of Error is as follows:

{¶ 48} "THE DECISION OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 49} In this assignment of error, McHenry contends that the trial court erred by finding that Kirby did not make valid inter vivos gifts to McHenry. She further claims that the trial court failed to examine McHenry properly and that it erred by finding that she concealed assets with regard to two of the checking accounts mentioned in the judgment. Finally, she contends that the trial court failed to properly credit her with "countless transactions which were for the benefit of the deceased."

{¶ 50} A trial court's judgment will be reversed only if its factual findings are against the manifest weight of the evidence. *KeyBank Natl. Assn. v. Mazer Corp.,* 2d Dist. Montgomery No. 23483, 2010–Ohio–1508, ¶ 36. In the civil context, a judgment will not be reversed by a reviewing court as being against the manifest weight of the evidence if there is some competent, credible evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus; *State v. Wilson,* 113 Ohio St.3d 382, 2007–Ohio–2202, 865 N.E.2d 1264, ¶ 24.

{¶ 51} We begin with the claim that the court erred in finding that the assets taken by McHenry were not valid gifts to her from Kirby. Examples of these gifts

abound. Four days prior to Kirby's death, McHenry wrote herself a check for $8,000, which was titled as a gift for retirement. From 2002 to 2006, McHenry gave $4,300 to others from Kirby's funds. McHenry wrote a $4,000 check to Sears, which she designated as a gift for services. In 2006 she wrote two checks that she designated as "back gifts," totaling $8,500.

**{¶ 52}** The power of attorney used by McHenry did not contain a clause authorizing the making of gifts, thereby rendering "the transfer[s] presumptively invalid." *MacEwen v. Jordan*, 1st Dist. Hamilton No. C-020431, 2003-Ohio-1547, ¶ 12 - 14. Factors for the court to then consider in determining whether the transfers from McHenry to herself were valid include "whether a transfer depleted assets necessary to maintain the principal's lifestyle; whether the principal knew of the gift and authorized it in some manner; whether the recipient of the transfer was the natural object of the principal's bounty and affection; whether the transfer was consistent with the principal's estate plan; whether the gift was a continuation of the principal's pattern of making gifts; and whether the transfer was made for another legitimate goal, such as the reduction of estate taxes." *Id.*

**{¶ 53}** The court found that Kirby was a frugal individual, whose total gift expenditures for a two-year period were a bit less than $500, with no gift being greater than $50 in value. After McHenry was given the power of attorney, Kirby's expenditures and gift-giving began to increase. This increase became even more pronounced when McHenry and her husband lost part of their income following her husband's retirement. McHenry claimed that Kirby gave her many gifts during this

period, but the amount of these gifts far exceeds the amount of gifts that Kirby had ever given in the past. These gifts were given by McHenry to herself, or others, using the power of attorney. The court specifically found that McHenry's testimony was "self-serving and unconvincing." The court further found that it is unlikely that Kirby would have been using her assets in such a profligate manner given that the evidence showed that she was "worried that she would not have enough money to care for herself until her death."

**{¶ 54}** We note that McHenry established a post office box to which she had all bank statements relevant hereto mailed; a fact that belies her claim that Kirby was aware of, and approved, all the expenditures made. If, as McHenry claims, she was with her mother nearly every day, mailing the statements to a post office box, instead of reviewing them at Kirby's residence or even having them mailed to McHenry's own home, is evidence of a consciousness of guilt.

**{¶ 55}** The claim that Kirby intended to give the monies to McHenry is not supported by the record, which establishes that Kirby was a frugal woman who was not in the habit of giving lavish gifts. Furthermore, the fact that her will established her intent for her assets to be divided equally between her children supports a finding that McHenry was not intended to receive such a large amount of Kirby's funds. The trial court's finding that these were not gifts to McHenry is not against the manifest weight of the evidence.

## VI.   The Trial Court Was Not Required to Question

**McHenry Concerning Her Use of Kirby's Funds**

{¶ 56} We next turn to the argument that the court did not make a proper inquiry of McHenry during the hearing. McHenry concedes that she was questioned, but she claims that she was not questioned "as to the US Bank account or the 5/3 Bank account mentioned in the decision [thus the court] was not permitted to find McHenry guilty of concealing assets in an account that it did not question McHenry about and did not instruct counsel to question McHenry about." She further contends that the court did not question her regarding the expenditures made as power of attorney. In support, she notes that R.C. 2109.50 directs the court to investigate the alleged misconduct.

{¶ 57} From our review of the record, it appears that there was evidence presented on the two accounts at issue as well as the expenditures. It is clear that Mancz asked questions and McHenry's counsel was given the opportunity to follow up on those questions. It is also clear that the court was, at times, involved in the questioning. While the court noted that there was not much evidence to be had concerning these Fifth Third Bank and US Bank accounts, it clearly did not use these accounts in its calculation of the  amount of monies concealed or taken by McHenry. Furthermore, as McHenry concedes, the court is permitted to have counsel question the witnesses under R.C. 2109.50.

{¶ 58} McHenry next complains that the court did not credit her with "countless transactions which were for the benefit of the deceased." We find no support for this assertion. Indeed, it appears that the court did credit some of the transactions as it found McHenry guilty of concealing far less assets than the amount

sought by Mancz.

{¶ 59}   McHenry's Fifth Assignment of Error is overruled.

### VII.   McHenry Did Not Preserve Alleged Error
### in the Trial Court's Liminal Evidentiary Rulings

{¶ 60}   McHenry's Sixth Assignment of Error is as follows:

{¶ 61}   "THE TRIAL COURT ERRED IN OVERRULING MCHENRY'S MOTION IN LIMINE AND/OR ABUSED ITS DISCRETION IN DOING SO."

{¶ 62}   In February 2011, McHenry filed a motion in limine seeking to introduce the testimony of decedent's estate-planning attorney, Joseph Kirby, regarding her plans for her estate, her state of mind and her relationship to her children.  She also sought leave to question Mancz regarding his investigation of the estate matters.  Finally, she sought to introduce her testimony, as well as the testimony of "certain" of her siblings, regarding Kirby's state of mind and relationships with her family.  She contends that the court erred by failing to hold a hearing on this matter prior to trial and by overruling the motion.

{¶ 63}   A trial court's decision to grant or deny a motion in limine is an interlocutory and preliminary order. *State v. Grubb,* 28 Ohio St.3d 199, 200–201, 503 N.E.2d 142 (1986).  In order to preserve the matter for appeal, the parties must renew their motions or objections at the appropriate time during trial.  *Id.*

{¶ 64}   A review of the record does not reveal whether a hearing was held on this matter.  However, the probate court entered an order on March 18, 2011, in which

it granted McHenry's motion with regard to the testimony of McHenry and her siblings. It further granted the motion insofar as it sought to have Joseph Kirby testify to the decedent's state of mind and her relationships. It denied the motion as it sought to have Joseph Kirby testify as to the deceased's estate-planning intentions. Finally, the court overruled the motion with regard to Mancz's investigation of the estate.

{¶ 65} Mancz contends that McHenry failed to renew the motion in limine at any time during trial, which McHenry does not dispute. We find nothing in the record to dispute Mancz's claim that the matter has not been preserved for appeal.

{¶ 66} McHenry's Sixth Assignment of Error is overruled.

### VIII. Evidence in the Record Supports the Trial Court's Finding that McHenry Was Guilty of Concealing, Embezzling, or Conveying Away the Decedent's Assets

{¶ 67} The Seventh Assignment of Error raised by McHenry is as follows:

{¶ 68} "THE TRIAL COURT ERRED IN FINDING MCHENRY 'GUILTY OF CONCEALING, EMBEZZLING, OR CONVEYING AWAY' ASSETS OF THE ESTATE AND IN ASSESSING A 10% PENALTY AGAINST MCHENRY AND/OR ABUSED ITS DISCRETION IN DOING SO."

{¶ 69} McHenry contends that the probate court erred by finding her guilty of concealing, embezzling or conveying away assets of the estate. In support, she argues that there was no evidence that she took anything which "she did not, in good faith, believe that she had a right to." She cites *Longworth v. Childers*, 180 Ohio App.3d

162, 2008-Ohio-4927, 904 N.E.2d 904 (2d Dist.), for the proposition that mere possession of estate assets is not enough to support a finding of guilt under R.C. 2109.50.

**{¶ 70}** This case is distinguishable from our holding in *Longworth*. The holding in that case noted that mere possession of estate assets is not enough to compel a guilty finding under R.C. 2109.50. *Id.* at ¶ 18 - 20. However, in that case, there was no evidence that defendant, who had held the decedent's power of attorney, ever intended to conceal the single account, in her own name, in the amount of about $5,000, that she was using to pay the decedent's expenses. (She also had about $3,000 in cash that she was using to pay the decedent's expenses). *Id.* Due to strained relations, she did not feel comfortable turning the assets over to the executor. *Id.* This court held that the defendant should turn over the assets, but that she was improperly found guilty of concealing assets. *Id.*

**{¶ 71}** Here, by contrast, McHenry took assets of her mother's to fund multiple accounts, in amounts in tens of thousands of dollars in some cases, titled solely in McHenry's name. McHenry's use of multiple accounts, shifting monies from one account to another, supports an inference that McHenry was attempting to hide the monies she had taken. The fact that McHenry set up a post office box where she had all the account statements mailed further supports that inference. There is evidence to support a finding that while some of the monies expended were for the benefit of Kirby, a large portion of the monies expended were for McHenry's benefit, and that much of the spending was largely unaccounted for.

**{¶ 72}** The probate court, in its findings, stated:

[McHenry's] testimony was self-serving and unconvincing. If there had been only one account or maybe two at the most, it would appear to the Court that there was nothing to hide. But [McHenry] opened many accounts, spent money at an alarming rate, and changed the mailing address of the statements. This leaves the Court with but one conclusion – [McHenry] was spending money without her mother's knowledge or consent. Mrs. Kirby did not intend to give [McHenry] the majority of her estate. Mrs. Kirby was unaware that [McHenry] was helping herself to her estate at such a fast pace or she definitely would have worried that she would outlive her resources. Mrs. Kirby worried that she would not have enough money to care for herself until her death. She certainly would not have been giving such large gifts. When she gave gifts, they were small, about $10. In fact, all her children, including [McHenry] testified that Mrs. Kirby was very frugal.

There is no credible evidence that Mrs. Kirby was present when any joint account, which was still opened at her death, was opened in her name. ***

**{¶ 73}** The evidence in the record supports the probate court's findings and its conclusion that McHenry concealed, embezzled and conveyed away assets of the estate. McHenry's Seventh Assignment of Error is overruled.

## IX. McHenry's Catch-All Eighth Assignment of Error, which Recapitulates her other Assignments of Error, is Without Merit.

{¶ 74}   McHenry's Eighth Assignment of Error states as follows:

{¶ 75}   "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING MCHENRY GUILTY AND LIABLE TO THE ESTATE IN THE AMOUNT OF $320,073.01."

{¶ 76}   In this assignment of error, McHenry reiterates all of her previous arguments into what may be intended as a cumulative-error argument.   We have found no merit in any of McHenry's assignments of error.   Therefore, her Eighth Assignment of Error, which recapitulates her other assignments of error, is overruled.

## X.   Conclusion

{¶ 77}   All of McHenry's assignments of error having been overruled, the judgment of the probate court is Affirmed.

· · · · · · · · · · · · ·

FROELICH and WILLAMOWSKI, JJ., concur.

(Hon. John R. Willamowski, Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).


Copies mailed to:

Barry W. Mancz
Harry G. Beyoglides, Jr.
Richard A Boucher
Julia C. Kolber
Lauren E. Grant
Hon. Alice O. McCollum